# United States Court of Appeals
## For the First Circuit

No. 08-1044

UNITED STATES OF AMERICA,

Appellee,

v.

DARIO GIAMBRO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Schwarzer,[*] District Judge.

David J. Van Dyke with whom Hornblower Lynch Rabasco & Van
Dyke, P.A. was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

October 2, 2008

---

[*] Of the Northern District of California, sitting by
designation.

**LYNCH**, <u>Chief Judge</u>.  A jury convicted Dario Giambro on one count of possessing a firearm, a 1914 "Marble Game Getter," that was not registered in the National Firearms Registration and Transfer Record (NFRTR) as required by the National Firearms Act of 1934.  <u>See</u> 26 U.S.C. §§ 5841, 5845(a), (e), 5861(d), 5871.  He now appeals his conviction.

Giambro challenges: (1) an order denying his Motion for a Judgment of Acquittal under Fed. R. Crim. P. 29; (2) an order denying his motion in limine to exclude Certificates of Nonexistence of a Record (CNR) tending to show that his firearm was not registered in the NFRTR; and (3) an order excluding the testimony of Giambro's purported expert on inaccuracies in the NFRTR.  We review the first issue de novo and the second and third for abuse of discretion.  Giambro's appeal raises two basic themes: that the evidence does not show he knew of the characteristics of the weapon which made it subject to registration and that the NFRTR is so unreliable that the district court erred in admitting evidence that the weapon was not registered in the database.  We affirm his conviction.

I.

We describe the facts in the light most favorable to the verdict in light of Giambro's challenge to the sufficiency of the record.

-2-

On the night of February 10, 2006, police were called to Giambro's Auburn, Maine home. Giambro had been in an altercation with Richard McClain, who had been involved in a dispute with Giambro's son and had come to Giambro's house. Giambro claimed he fired two warning shots, one of which ricocheted and hit McClain. Giambro was arrested on state charges but the charges were later dismissed when he was found to have acted in self-defense.

After the shooting, officers obtained a search warrant and seized 204 firearms from Giambro's home. Detective Chad Syphers, who had worked for a licensed firearms dealer, suspected that two of the guns had characteristics that required them to be registered in the NFRTR. Syphers turned the weapons over to an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

One of the two firearms, the subject of Giambro's conviction, is a gun called the "Marble Game Getter," which was manufactured by the Marble Safety Company in 1914.[1] The Game Getter has several distinctive features. It has two barrels -- a rifle barrel which is on top of a shotgun barrel. Each barrel is between twelve and eighteen inches long. The gun has a folding stock that allows the user to fire the gun like a pistol. It also has a lock on the loading end of the barrels that allows the user

---

[1] The other weapon was a .22 caliber Winchester rifle with a short barrel. The ATF determined that the Winchester was not subject to the registration requirement.

-3-

to fire a shot from either the top or bottom barrel without reloading. The parties stipulated that the Game Getter's characteristics subject it to the federal registration requirement. The statute of conviction, 26 U.S.C. § 5845(a), extends the registration requirement to "weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading." Id. § 5845(e).

On December 22, 2006, the Auburn Police Department returned all of the firearms to Giambro except for the two which had been sent to the ATF. Giambro went to the precinct to retrieve them. When the police laid out the firearms (excluding the Game Getter and the Winchester) in front of Giambro, he said that two were missing and that one of those was the Game Getter.

Although Giambro was acquitted on the state charge, on April 25, 2007, he was indicted federally on one count of knowingly possessing a firearm that was required to be registered in the NFRTR under 26 U.S.C. § 5845 and was not registered to him. The prosecution arranged for the ATF to prepare CNRs to show that there was no record the Game Getter was registered to Giambro in the NFRTR. Giambro filed a motion in limine on July 19, 2007 to exclude the CNRs on the grounds that the NFRTR was unreliable. The government replied that it intended to offer two CNRs from the ATF stating that after a diligent search of its records, it had located

no record of registration by Giambro of the firearm named in the indictment and no record that he had registered any other weapon. The district court denied Giambro's motion to exclude. The court concluded that the CNR evidence was admissible under Rule 803(10), Fed. R. Evid., and that Giambro had "failed to show that the NFRTR is currently unreliable or is unreliable as it pertains to him." United States v. Giambro, No. 07-41-P-S, 2007 WL 2386320, at *1 (D. Me. Aug. 17, 2007).

The prosecution filed its own motion in limine on August 27, 2007 to exclude the testimony of Giambro's proposed expert, Eric Larson, who was employed as an analyst with the Government Accountability Office and would testify in an unofficial capacity. After a hearing, the court granted the motion and excluded Larson's testimony under Rules 702 and 703, Fed. R. Evid., and independently under Rule 403, in reasoning we detail below.

At trial, Giambro moved for a judgment of acquittal at the close of the prosecution's case and renewed the motion after the jury's verdict. See Fed. R. Crim. P. 29. He argued that the prosecution had failed to present any evidence that he knew the length of the Game Getter's barrels, that he knew about its firing mechanism, or that he had ever handled the gun. Absent such evidence, Giambro argued, the prosecution had failed to prove the knowledge requirement that the Supreme Court had read into the

statute of conviction in Staples v. United States, 511 U.S. 600, 605, 618-19 (1994). The court denied Giambro's motion.

The court sentenced Giambro to five months imprisonment and a $50,000 fine. This timely appeal followed.

II.

A.        The Denial of Giambro's Rule 29 Motion

Review of a district court's denial of a Rule 29 motion for a judgment of acquittal is de novo, taking the evidence in the light most favorable to the government and making all reasonable inferences in its favor. United States v. Nieves-Castaño, 480 F.3d 597, 599 (1st Cir. 2007).

The statute of conviction, 26 U.S.C. § 5861(d), as construed in Staples, requires only that a defendant have knowledge that the weapon has the characteristics which subject it to registration, rather than knowledge of the registration requirement. Staples, 511 U.S. at 618-19. The prosecution thus must prove only that the defendant knew "of the characteristics of his weapon that br[ought] it within the scope of the Act," not that the defendant knew the weapon was subject to a registration requirement under federal law. Id. at 615 n.11; see also Nieves-Castaño, 480 F.3d at 599 (employing mens rea analysis from Staples in reviewing conviction for unlawful possession of a machine gun under 18 U.S.C. § 922(o)).

-6-

The characteristics as set forth in the statute are: "a combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading." 26 U.S.C. § 5845(e). The mens rea for a charge of failing to register a weapon in the NFRTR may be established by circumstantial evidence. Staples, 511 U.S. at 615 n.11; see also Nieves-Castaño, 480 F.3d at 601. The Rule 29 issue here turns on sufficiency of the evidence and not on an issue of law.

Giambro has not met his burden of showing that a judgment of acquittal was warranted. There was evidence in the record to support a finding that Giambro had knowledge of each of the statutory characteristics. The jury heard testimony that Giambro recognized that two of his firearms were missing when the rest of his collection was laid out in front of him and specifically asked where the Game Getter was. From this the jury could conclude he was familiar with this particular weapon. The jury also heard that defendant had a large number of guns in his possession and could reasonably infer he was a gun collector or had at least a specialized knowledge and interest in firearms.

The jury could reasonably infer that Giambro was well aware of the Game Getter's particular characteristics. After all, he specifically asked for it when it was not among the weapons returned to him at the police station.

Giambro concedes that the government did provide evidence to support the inference that the Game Getter "had apparently at least once been viewed by him, perhaps in the box, from which [he] obtained an appreciation of what the 'Game-Getter' looked like." Giambro argues that the statement he made when his other firearms were returned proves only that he "could recognize/distinguish the 'Game-Getter' from his other firearms . . . [not] that he could recognize that the 'Game-Getter' had characteristics which subjected it to the registration requirement." However, the very characteristics that distinguish the Game Getter from other guns -- namely its short barrel lengths, the fact that there were two barrels, and its single trigger for two different barrels -- are precisely those that subject it to the registration requirement. All of these characteristics were evident from looking at the weapon.

Further, the jury heard from Detective Sypher, who stated that he recognized the Game Getter as a firearm that was subject to the federal registration requirement "as soon as [he] saw it," based on the short barrels of the gun. The jury saw the weapon and therefore could reach its own determination of whether the characteristics were clear from simply looking at the Game Getter.

Our recent opinion in Nieves-Castaño does not help Giambro. There, we reversed the defendant's conviction for unlawfully possessing a machine gun, see 18 U.S.C. § 922(o),

-8-

because the evidence was insufficient to show that the defendant had viewed the weapon, which was inside a bag. Moreover, even if defendant had ever viewed the weapon, the characteristic that rendered possession of the weapon unlawful -- the fact that it had been altered to allow fully automatic firing -- would not be apparent to the defendant, who had no demonstrated expertise with firearms. Nieves-Castaño, 480 F.3d at 600-01. Instead, the only external evidence was a small hole or mark between the weapon's fire and safety settings, a characteristic that would not have informed a layperson, like the defendant, of the weapon's distinctive capabilities. Here, by contrast, the "external indications signaling the nature of the weapon," id. at 601 (quoting Staples, 511 U.S. at 615 n.11), were sufficient to put even a layperson on notice that the Game Getter had the characteristics required by the statute.

Our conclusion on the Rule 29 issue does not dispose of the case. Even if the evidence were sufficient to support the conviction, we would reverse if there were prejudicial trial error.

B.      The Court's Admission of Certificates of the Nonexistence
        of a Record of Registration with the NFRTR

Giambro also challenges the district court's refusal to exclude testimony regarding the nonexistence of a registration for the Game Getter in the NFRTR. We review challenges to a district court's decision to admit or exclude testimony for abuse of discretion. United States v. Newbert, 504 F.3d 180, 184 (1st Cir.

-9-

2007); <u>United States</u> v. <u>Sebaggala</u>, 256 F.3d 59, 66 (1st Cir. 2001). Giambro argues the court misapplied Rule 803(10); he does not make a Confrontation Clause challenge. <u>Cf.</u> <u>United States</u> v. <u>Earle</u>, 488 F.3d 537, 541 (1st Cir. 2007) (considering challenge to CNRs as testimony presented without opportunity for cross-examination by the defendant).

At trial, the government presented both the CNRs and the testimony of Gary Schaible, an ATF Program Manager. Schaible testified about the NFRTR and about the procedures that the agency used in searching for records that Giambro had registered the Game Getter. Schaible testified that a search had been made and that there was no record of Giambro having registered the Game Getter. He also testified about audits that found errors in the ATF's administration of the NFRTR.

Giambro's argument is that because of alleged shortcomings in the NFRTR, the evidence does not meet a threshold standard of reliability to qualify for the exceptions to the hearsay rule outlined in Rule 803(10) (absence of public records). The district court refused to exclude the CNRs because it concluded that Giambro had neither demonstrated the NFRTR was currently unreliable nor unreliable as it pertained to him. <u>Giambro</u>, 2007 WL 2386320, at *1. It also found that Giambro failed to show that the ATF had conducted a "less than diligent search of the NFRTR." <u>Id.</u> The district court denied defendant's pre-trial motion in limine

-10-

without prejudice.  At trial, the court overruled defendant's objection to admission of the CNRs.

The government submitted the CNRs and the testimony from Schaible to meet its burden to prove a negative: that Giambro had not registered the Game Getter.  Cf. Earle, 488 F.3d at 541 (noting the government's similar burden in showing lack of authorization for reentry from the Attorney General in prosecutions for illegal reentry after deportation, 8 U.S.C. § 1326, and upholding admissibility of CNRs and testimony).  As in Earle, the government's evidence was of the circumstances of the records search and the results of the search.  At trial, Schaible's testimony described the NFRTR, which consists of a series of databases that the ATF uses to track whether gun owners have registered their firearms.  He also described how searches of the NFRTR are typically conducted.  The ATF performs database searches by a person's last name, including variations, and narrows results by state.  A search of ATF records in the NFRTR for Dario Giambro revealed that no firearm had been registered to him for as long as the database has existed, since 1934.  Schaible also testified that the ATF searched for records of a registration of the Game Getter, for which only the serial number of the gun was available.  A search of the serial number produced information about three other weapons but no registration record for the Game Getter.  After this

testimony, the district court admitted the CNRs into evidence over Giambro's objection.

On appeal, Giambro bases his argument on Larson's testimony at the hearing on the government's motion in limine.[2] Giambro has offered nothing to show that evidence about the nonexistence of records of his registering the Game Getter is not admissible under an exception to the hearsay rule because "the circumstances indicate a lack of trustworthiness." United States v. Robinson, 544 F.2d 110, 115 (2d Cir. 1976). Giambro's challenge focuses only on "general evidence that there may have been problems with the NFRTR in the past." Giambro, 2007 WL 2386320, at *1.

Further, because Giambro challenges the overall reliability of the NFRTR, he faces an additional hurdle. Other circuits have upheld the NFRTR against challenges to its reliability. In United States v. Rith, 164 F.3d 1323, 1334-35 (10th Cir. 1999), for example, the court noted that the ATF had lowered the critical-error rate for searches and had provided for a second level of review for registration checks within the agency. Id. at 1336; see also United States v. Metzger, 778 F.2d 1195, 1202-03 (6th Cir. 1985) (finding adequate indicia of reliability for Sixth Amendment purposes); cf. United States v. Rigsby, 943

---

[2] He also refers to a study, which is an undated, unpublished article authored by a private attorney that was not made part of the record. Even if we were to consider the article, it would not establish that the district court abused its discretion in admitting the CNRs.

F.2d 631, 639 (6th Cir. 1991) (admitting CNRs from NFRTR search over unrelated objection); United States v. Combs, 762 F.2d 1343, 1347-48 (9th Cir. 1985) (same).  Although both the Rith court and the district court here acknowledged past problems with the NFRTR, both emphasized that the ATF has addressed problems with the database and improved its reliability.

The district court did not abuse its discretion in concluding that Giambro failed to show the NFRTR was unreliable as to him.

C.      The Court's Exclusion of Giambro's Proffered Expert
        Testimony

Giambro next argues the court erred in excluding testimony from Eric Larson, Giambro's proffered expert.  Larson would have testified to inaccuracies and incompleteness in the NFRTR, in order for defendant to argue the government had not met its burden of showing that the Game Getter was unregistered.  We review the district court's decision to admit or exclude purported expert testimony for abuse of discretion.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Newbert, 504 F.3d at 184; Sebaggala, 256 F.3d at 66.

The district court relied on two independent grounds to exclude the evidence.  It held that Larson did not qualify as an expert under Rules 702 and 703, Fed. R. Evid., and also held that the testimony could be excluded under Rule 403, Fed. R. Evid.,

-13-

because it would "mislead the jury and cause confusion." The court did not abuse its discretion as to either ground.

The court fully considered Giambro's proffer and held a hearing on the motion in which Larson testified at length. Larson described the nature of the NFRTR and discussed his analysis of the database's reliability. Through a Freedom of Information Act request, Larson had obtained reports from the ATF that provided yearly transaction data on registrations. In particular, Larson focused on filings of "Form 4," the form by which owners register transfers with the agency. He analyzed data from 1992 to 1996 and concluded that "Form 4's were being added back into the NFRTR."[3] Larson testified that one explanation for this finding could be that ATF was doing so in response to errors and omissions in the NFRTR.

In support of his conclusion, Larson cited the experience of two gun owners, one who had been involved in a state civil suit against the ATF in 1992, and one who had communicated with the ATF in 1999 after the agency misplaced his ownership records. Larson also relied on his own conversations with ATF personnel, who told him they assumed the agency added records if mistakes were discovered, and a 1998 audit of the NFRTR that concluded agency

---

[3] Larson also reviewed data on filings of Forms 1 and 4467, which are used to register original ownership of firearms, and found similar patterns.

-14-

personnel did not adhere to procedures for processing registration documents in every case.

The district court concluded that the testimony was not "based upon sufficient facts or data" and was not "the product of reliable principles and methods," and that Larson had not "applied the principles and methods reliably to the facts of the case." See Fed. R. Evid. 702.  The court stated that "suppositions . . . and conjecture abound[ed]" in the testimony, and that Larsen had relied on "underlying data [that was] purely anecdotal and without scientific basis."

The court further found that certain aspects of Larson's work undercut the reliability of his testimony.  See generally Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-95 (1993); Kumho Tire, 526 U.S. at 147.  The court found that the techniques Larson used -- his statistical analysis of the ATF's annual data, and his correspondence with gun owners and ATF personnel -- were untested and lacked peer-review.  Larson had also failed to provide the known or potential rate of error for his statistical analysis.  The court found that the conclusion he drew represented "an unfounded extrapolation from the underlying data."  Finally, the court found Larson was unable to establish why the conclusion he reached demonstrated that previous registrations had been destroyed or that, if previous registrations had been misplaced, ATF personnel could not find them through a records search.

Giambro asserts the district court erred because "[i]ndisputably, applied statistics represents an objective and scientifically-precise (and measurable) science" and "indisputably, Mr. Larson identified measurable . . . incompleteness/inaccuracies with the NFRTR." The district court was well within its discretion to conclude that, regardless of whether applied statistics as a field is a science, Larson's particular use of the technique to reach his conclusion did not present sufficient indicia of reliability and that the data on which Larson based his analysis was "purely anecdotal."

                              III.

       The judgment of conviction is <u>affirmed</u>.