*370 LIPEZ, Circuit Judge,
dissenting.
The majority concludes that the government’s evidence was sufficient to allow a jury to determine beyond a reasonable doubt that Shaw had knowledge of the specific fact that the barrel of his shotgun was less than 18 inches in length. I disagree. The jury’s verdict required impermissible speculation.
I.
The government bears a difficult burden of proof in this case because of the specific mens rea requirement imposed by the Supreme Court in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). As the majority observes, the Court held in Staples that in a prosecution under the National Firearms Act (the “Act”), 26 U.S.C. §§ 5801-5872, “the Government should [be] required to prove that [the defendant] knew of the features of his [weapon] that brought it within the scope of the Act,” Staples, 511 U.S. at 619, 114 S.Ct. 1793. In this case, Staples required that the government prove that Shaw knew that the barrel of his 12-gauge shotgun was less than 18 inches in length.[6] See 26 U.S.C. § 5845(a)(1). The probative force of the circumstantial evidence relied upon by the majority to support the jury’s verdict must be measured against this specific mens rea requirement.
The majority finds that Shaw’s “acquaintance with the particular weapon, his familiarity with firearms generally, and the external and readily observable shortened feature of the gun’s sawed-off barrel permitted the jury to infer Shaw’s knowledge relative to barrel length.” These factors reflect the majority’s reliance on our decision in United States v. Giambro, 544 F.3d 26 (1st Cir.2008). In that case, the weapon at issue was a 1914 Marble Game Getter. As described by the court,
[i]t has two barrels — a rifle barrel which is on top of a shotgun barrel. Each barrel is between twelve and eighteen inches long. The gun has a folding stock that allows the user to fire the gun like a pistol. It also has a lock on the loading end of the barrels that allows the user to fire a shot from either the top or bottom barrel without reloading.
Id. at 28. The Act requires that owners register “weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading.” 26 U.S.C. § 5845(e); id. § 5841. The defendant in Giambro argued that the evidence was insufficient to establish his knowledge of the characteristics of the firearm that placed it within the Act’s registration requirement. We held that the evidence was sufficient because the defendant 1) was familiar with the specific firearm at issue, 2) was unusually knowledgeable about firearms in general, and 3) the relevant characteristics of the firearm were externally visible. Giambro, 544 F.3d at 30. None of these factors support the verdict here.
A. Familiarity with the Shotgun
In Giambro, officers seized 204 firearms from the defendant. When the defendant *371 went to the police station to retrieve the guns, which were laid out in front of him, he noticed that the gun covered by the Act was missing. Id. We concluded that “[t]he jury could reasonably infer that [the defendant] was well aware of the [gun’s] particular characteristics. After all, he specifically asked for it when it was not among the weapons returned to him at the police station.” Id.
In contrast, the government presented no evidence of Shaw’s history or familiarity with the shotgun at issue here, aside from the fact that he was arrested with it. Nothing about the exercise of preparing a gun for hunting requires awareness of the precise length of the barrel of the gun. If the government had presented evidence that Shaw himself had modified the shotgun, the argument that he was aware that the barrel measured less than 18 inches would make more sense. See United States v. Sanders, 520 F.3d 699, 701 (7th Cir.2008) (noting that fact that defendant personally modified shotgun was “compelling” evidence that he was aware that the barrel was shorter than 18 inches in length). There is no such evidence in this case. There is also no evidence that Shaw had any particular reason or need to know the length of the shotgun’s barrel.
B. Knowledge of Firearms Generally
In Giambro, we also relied on the fact that the defendant owned such a large number of guns — more than two hundred — that the jury could infer that “he was a gun collector or had at least a specialized knowledge and interest in firearms.” 544 F.3d at 30. This expertise supported the inference that he was aware of the specific characteristics of the “Game Getter” weapon.
There is no similar evidence of expertise in this case. Shaw was found with two guns in his possession, not two hundred, some ammunition, and other items useful for hunting. Although the evidence might support an inference that Shaw was an experienced hunter, there was no evidence that an experienced hunter, unlike an ordinary person, would be aware of the specific fact required by the mens rea in this case — that the barrel of the shotgun being used for hunting was less than 18 inches in length. While it is true that one wishing to hunt illegally from within a vehicle may be sensitive to the need for a weapon with a shorter barrel, this need does not require an awareness of the precise length of a weapon’s barrel. In fact, for such an exercise, the overall length of the weapon is its more relevant characteristic, not the length of its barrel.
C. The Visibility of the Shotgun’s Relevant Characteristic
Perhaps most significantly, the majority relies on the conclusion that “the evidence permitted the jury to infer that the barrel length of less than 18 inches was readily observable to the defendant.” It is true that it may be reasonable in some circumstances to infer that merely observing a weapon or handling it on one occasion is sufficient to provide an awareness of its relevant characteristics. See Staples, 511 U.S. at 615 n. 11, 114 S.Ct. 1793 (noting that, upon observation, knowledge may be inferred based on “any external indications signaling the nature of the weapon”). For example, in Giambro, we noted that the Game Getter was a very unusual weapon with “distinctive features.” 544 F.3d at 28. In particular, its vertically stacked rifle and shotgun barrels, along with the lock that allowed the user to fire from either barrel without reloading, were “external indications” that were “sufficient to put even a layperson on notice that the Game Getter had the characteristics required by the statute.” Id. at 30-31 (internal quota *372 tion mark omitted); cf. United States v. Nieves-Castaño, 480 F.3d 597, 601-02 (1st Cir.2007) (reversing conviction where relevant characteristics of firearm were not externally visible and no other material evidence supported conviction).
The Model Penal Code defines “knowledge” of an attendant circumstance as an “aware[ness] that ... such circumstances exist.”[7] Model Penal Code § 2.02(b)(i). Here, the government has produced no evidence indicating that, given the relatively small discrepancy between the barrel’s actual length of 15.5 inches and the statutory length of 18 inches, Shaw was able to visually judge the barrel of his shotgun to be impermissibly short. Yet this capacity is a requisite premise of the government’s case. One may not be charged with awareness of a fact on the basis of observation alone without proof of the capacity to apprehend that fact visually. That is the inevitable logic of the specific mens rea requirement imposed by Staples,[8]
Emphasizing that the gun itself was introduced into evidence, along with photographs of the gun at the scene of the arrest, the majority asserts that the jury, relying on “common sense” and the “dictates of mature experience,” could deter *373 mine that Shaw’s observation of this particular weapon was sufficient to convey knowledge that its barrel was under 18 inches. Strikingly, one of the photographs introduced by the government showed the shotgun next to an extended tape measure showing the overall length of the gun (not solely the barrel’s length). It is difficult to understand how a demonstration for the jury of comparative length reliant on a tape measure supports the majority’s assertion that the “common sense” of the jurors permitted them to infer that Shaw, simply by looking at the shotgun, knew its barrel measured less than 18 inches. Indeed, that tape measure demonstration hopelessly tainted the appeal to common sense.[9]
The majority also notes that there was testimony that one of the arresting officers “quickly noted that the gun ... appeared to be too short for federal guidelines.” The observational capacity of a seven-year veteran of the Maine State Police whose job requires him to make visual judgments about the barrel length of guns is an odd proxy for the “mature experience” of jurors whose roles in life, so far as we know, do not require them to make precise judgments about the length of objects.[10] Certainly, the atypical experiences of the law enforcement officer could not rationally inform the judgment of the jurors about Shaw’s capacity to judge the barrel length of the shotgun simply from looking at it.
In trying to build its circumstantial case against Shaw, the issue for the government was Shaw’s particular capacity to calculate the length of the gun barrel through observation. See Giambro, 544 F.3d at 30-31 (relying on experience, knowledge and awareness of particular defendant); see generally Staples, 511 U.S. at 620, 114 S.Ct. 1793 (“[I]f Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, ... it would have spoken more clearly to that effect.”). In this case, the overall length of the weapon at issue was approximately 29 inches. There is no support in the record for the proposition that Shaw’s mere observation of a 29-inch long weapon made him aware of the fact that its 15.5-inch barrel was less than 18 inches in length.[11] In evaluating a similar case, the Seventh Circuit has observed that “[t]here may be situations where a person could honestly believe that their possession of the weapon was entirely innocent. For example, it is not hard to conceive of a person reasonably believing a 17.5 inch shotgun is over 18 inches and therefore perfectly legal.” Edwards, 90 F.3d at 205. While there are certainly some discrepancies that are so large that a jury may readily infer the capacity to determine, by mere observa *374 tion, that the length of a barrel is under 18 inches, a 2.5-inch discrepancy is too small to establish beyond a reasonable doubt Shaw’s knowledge by observation.[12]
D. Consciousness of Guilt
The majority also relies on Shaw’s flight as evidence of his consciousness of guilt regarding the barrel length of his unregistered shotgun. However, Shaw was flaunting several laws on the day of his arrest. As he outlines in his brief, “[h]unting on Sunday is illegal. Shooting a gun from a car is illegal, as is shooting a gun within 100 yards of a residence, and hunting without a license. It is also illegal to have a loaded firearm in the passenger compartment of a car.” Indeed, Shaw’s conduct upon being arrested — ejecting ammunition from the shotgun, rather than endeavoring to conceal it — is inconsistent with the government’s theory that he fled because he knew the barrel of the shotgun was less than 18 inches long.
Given the range of Shaw’s illegal conduct on that day, Shaw’s flight says nothing about his awareness of the length of his shotgun barrel. As we stated in Nieves-Castaño, “knowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged.” 480 F.3d at 601 (emphasis in original); see also O’Laughlin v. O’Brien, 568 F.3d 287, 303 (1st Cir.2009) (“Although [defendant’s] behavior could indicate consciousness of guilt for some crime, ... it is an impermissible inferential leap for a jury to find this behavior significantly probative of whether [defendant] committed [the crime charged].”).
II.
Because it finds that there was sufficient evidence to permit the jury to find that Shaw had actual knowledge of the length of his shotgun’s barrel, the majority does not address the issue of willful blindness. Since I do not find the evidence to be sufficient to prove actual knowledge, I now do so.
As we have previously explained, “[w]illful blindness serves as an alternate theory on which the government may prove knowledge.” United States v. Pérez-Meléndez, 599 F.3d 31, 41 (1st Cir.2010). In order to establish willful blindness, a jury must make two findings: “First, that the defendant was aware of a high probability of the fact in question; second, that the defendant consciously and deliberately avoided learning of that fact.” United States v. Lizardo, 445 F.3d 73, 85 n. 7 (1st Cir.2006) (finding no error in quoted instruction). Willful blindness is determined using a subjective standard, and thus “[t]he focus of the willful blindness instruction must be on the particular defendant and not on the hypothetical reasonable person.” United States v. Griffin, 524 F.3d 71, 80 (1st Cir.2008).
Although willful blindness is not the same as actual knowledge, it is not a lesser standard. United States v. Cunan, 152 F.3d 29, 40 (1st Cir.1998) (stating that jury must find willful blindness beyond a reasonable doubt); United States v. Whittington, 26 F.3d 456, 462 (4th Cir.1994) (stating that willful blindness instruction does not alter requirement that knowledge be *375 proved beyond a reasonable doubt). Negligence, carelessness, or mistake in apprehending a fact are insufficient to establish willful blindness. See Griffin, 524 F.3d at 80-81. In fact, we have cautioned that “[t]he danger of an improper willful blindness instruction is ‘the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place.’ ”[13] United States v. Brandon, 17 F.3d 409, 453 (1st Cir.1994) (quoting United States v. Littlefield, 840 F.2d 143, 148 n. 3 (1st Cir.1988)(alteration in original)(internal quotation mark omitted)).
Ultimately, a willful blindness instruction “ ‘allows the jury to impute knowledge to [a defendant] of what should be obvious to him, if it fluids], beyond a reasonable doubt, a conscious purpose to avoid enlightenment.’” Pérez-Meléndez, 599 F.3d at 41 (quoting United States v. St. Michael’s Credit Union, 880 F.2d 579, 585 (1st Cir.1989)). Thus, the willful blindness instruction permits conviction on the basis of imputed knowledge, as opposed to actual knowledge. However, whether relying on inferred or imputed knowledge, the quantum of evidence required remains the same — sufficient evidence to permit a fact-finder to make a determination beyond a reasonable doubt. Cunan, 152 F.3d at 40 (stating that jury must find willful blindness beyond a reasonable doubt).
As explained, “[t]he focus of the willful blindness instruction must be on the particular defendant and not on the hypothetical reasonable person.” Griffin, 524 F.3d at 80. I have already explained that the government’s evidence of Shaw’s familiarity with the shotgun he was using, his knowledge of firearms generally, the shotgun’s observable length, and his consciousness of guilt was insufficient to establish beyond a reasonable doubt that he knew that the barrel of the shotgun was less than 18 inches in length. Admittedly, the fact of Shaw’s observation and handling of the gun gets the government closer to the mark, even pursuant to the beyond a reasonable doubt standard, when it must prove only that Shaw was aware of a “high probability” that the barrel was less than 18 inches long, and not his actual knowledge of that fact. However, it is unnecessary to decide whether Shaw’s observation of the shotgun’s 15.5-inch barrel conveyed an awareness of a “high probability” that it was under 18 inches in length. That is so because the government has failed to present any evidence that would permit the jury to find that the second prong of the willful blindness analysis has been met.
To meet the second prong of the analysis, the government must prove that Shaw “consciously and deliberately avoided learning” of the barrel’s length. Lizardo, *376 445 F.3d at 85 n. 7. If the government had introduced some evidence indicating that Shaw had a reason or need to know of the barrel’s length, it might have provided a basis for the jury to find that Shaw deliberately avoided learning of this fact. Without this evidence, or any other evidence indicating a conscious and deliberate decision by Shaw, there is nothing to permit the jury to infer that Shaw deliberately closed his eyes to the barrel’s length. Thus, even if I found the evidence sufficient to permit the jury to conclude beyond a reasonable doubt that Shaw was aware that there was a high probability that the barrel was less than 18 inches long — and I do not — I would still conclude that the government’s evidence was insufficient to support conviction on the basis of willful blindness.
III.
The burden imposed by Staples in a case such as this is heavy. It can be difficult to prove beyond a reasonable doubt knowledge of a fact as specific as the length of a gun barrel.[14] Nevertheless, we may not ease the government’s burden by allowing the jury to draw inferences that inescapably require undue speculation, see O’Laughlin, 568 F.3d at 301 (“[A] reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.”) (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir.2008)(internal quotation marks omitted)), and “[g]uilt beyond a reasonable doubt cannot be premised on pure conjecture,” Stewart v. Coalter, 48 F.3d 610, 615 (1st Cir.1995).
The majority’s decision endorses just such conjecture. It impermissibly dilutes the beyond a reasonable doubt standard. As the Seventh Circuit observed in Edwards,
although the government may face a tougher burden in the close cases, we believe this is exactly what the Supreme Court held Congress intended — because the close case is exactly when you run the highest risk of convicting someone “whose conduct would not even alert them to the probability of strict regulations.”
90 F.3d at 205 (quoting Staples, 511 U.S. at 616, 114 S.Ct. 1793). As the appellant forcefully argues, if we affirm the conviction here, we will have adopted the legal fiction at the heart of the government’s case — namely, that upon mere observation it is obvious to a person of ordinary perceptive powers that an object 15.5 inches in length does not measure 18 inches. Regrettably, the majority has done so. That fiction is incompatible with the exacting mens rea requirement imposed by Staples.
Therefore, I respectfully dissent.

. The concurrence begins by referring to United States v. Erhart, 415 F.3d 965 (8th Cir.2005), which reiterated the Eighth Circuit's holding in United States v. Barr, 32 F.3d 1320 (8th Cir.1994), that the knowledge requirement imposed by Staples does not apply to short-barreled shotguns. However, these cases remain outliers; no other circuit has adopted this position and several, directly addressing Barr, have explained in detail why that approach is a misreading of Staples. See, e.g., United States v. Gergen, 172 F.3d 719, 723-24 (9th Cir.1999); United States v. Reyna, 130 F.3d 104, 107-09 (5th Cir.1997); United States v. Edwards, 90 F.3d 199, 203-05 (7th Cir.1996). The majority does not rely on Bair’s reasoning and neither, ultimately, does the concurrence.

. This nearly tautological definition leaves unanswered the question of whether a defendant must consciously consider the fact in question to be deemed to have knowledge of the fact. Alternatively stated, this is the problem of whether latent knowledge — an ability to provide the requisite information if prompted— would suffice to satisfy a mens rea requirement. While I have found no decision addressing the issue, most commentators appear to assume that latent knowledge is knowledge for the purpose of establishing criminal liability. See, e.g., Kenneth W. Simons, Should the Model Penal Code’s Mens Rea Provisions Be Amended?, 1 Oh. St. J.Crim. L. 179, 194-95 (2003); Joanne Klineberg, Anger and Intent for Murder: The Supreme Court Decision in R. v. Parent, 41 Osgoode Hall L.J. 37, 57-58 (2003). However, even if we accept this proposition, a defendant must at least have the capacity to be aware of a given fact before being charged with knowledge, actual or latent.

. I am aware that other circuits dealing with these gun registration cases have shown a more relaxed approach to similar sufficiency of the evidence challenges. See, e.g., United States v. Michel, 446 F.3d 1122, 1131 (10th Cir.2006) ("[E]vidence a defendant observed and handled [a] sawed-off shotgun is sufficient for a jury reasonably to infer that the defendant knew that the weapon was shorter than twenty-six inches overall or had a barrel length of less than eighteen inches.” (second alteration in original) (internal quotation marks omitted)); United States v. Miller, 255 F.3d 1282, 1287 (11th Cir.2001) ("[T]he length of the barrel is a patently obvious characteristic, readily apparent to anyone, including [defendant], who observes the gun.... The shotgun was admitted as evidence and published to the jury. This evidence permitted the jury to infer that [defendant] knew the barrel’s [15.5-inch] length was under 18 inches.”). The assumption, oft unexamined, that mere observation is sufficient, in every case, to convey knowledge that the length of a shotgun barrel is under 18 inches is reflective of the "precedential cascade” phenomenon, which leads courts to uncritically follow one another. See Cass R. Sunstein, Why Societies Need Dissent 59-60 (2003); Adrian Vermeule, Common Law Constitutionalism and the Limits of Reason, 107 Colum. L.Rev. 1482, 1497 (2007) (“[A] line of precedents may represent little more than a rational decision by later judges to ignore their private information in favor of what earlier courts have said. Where this occurs, later decisions in the line of precedent are not independent contributions that add to the informational value of the whole....”). In most cases, courts have taken for granted the proposition that observation alone is sufficient to infer knowledge of the barrel’s length. Undoubtedly, there are many cases in which the discrepancy between actual length and statutory length is large enough that this observational approach makes sense. However, this will not always be the case, and I respectfully disagree with my colleagues in other circuits who have found that observation alone is always sufficient, no matter how small the discrepancy.

. Apparently, no objection to this evidence was lodged at trial. That was a mistake.

. Offering a romanticized view of Maine as a rural state of forest and field, where everyone knows their guns, the concurrence assumes that the "background facts” available to Maine jurors give them a special capacity to draw inferences about Shaw’s awareness of his shotgun’s length. In fact, as of 2006, only 14% of Maine’s population self-identified as hunters. United States Fish and Wildlife Service, 2006 National Survey of Fishing, Hunting, and Wildlife-Associated Recreation 102 (2006), available at http://wsfrprograms.fws. gov/Subpages/NationalSurvey/na1_survey 2006_final.pdf. This disparity between fact and assumption illustrates the dangers of relying on stereotypes to defend a jury’s work. That reliance also highlights the conjecture at the core of the majority’s decision.

. The government points out that the shotgun’s barrel carried a notation indicating that it was originally 28 inches long. This fact simply confirms that Shaw was aware that the barrel had been shortened' — a point that he does not dispute. It is not probative of his knowledge of the extent to which the barrel was shortened.

. For instance, in Sanders, the Seventh Circuit found that the fact that the defendant handled the gun and had it in his possession when he was arrested was sufficient to allow inference of the requisite knowledge. 520 F.3d at 701. However, in that case, the gun at issue had a barrel of less than 12 inches in length, making it more than one-third shorter than the statutory length. While a jury may be entitled to infer that such a dramatic difference is readily apparent, such an inference becomes more speculative the smaller the discrepancy in length.

. For this reason, we limit the circumstances in which willful blindness instructions are given, and we are often faced with the issue of whether the instruction was appropriate given the facts of a particular case. We have held that '[a] willful blindness instruction is appropriate if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge.' " United States v. Mitrano, 658 F.3d 117, 123 (1st Cir.2011) (quoting United States v. Azubike, 564 F.3d 59, 66 (1st Cir. 2009)). In evaluating the second element, we have noted that “[i]n determining whether the facts suggest the type of deliberate avoidance warranting a willful blindness instruction, we must consider whether the record evidence reveals flags of suspicion that, uninvestigated, suggest willful blindness.” Id. (internal quotation marks omitted). In this appeal, Shaw does not challenge the court’s decision to give the willful blindness instruction, but argues that, once given, there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he was willfully blind to the length of his shotgun's barrel.

. This burden is neither inevitable nor unintended. As the Court noted in Staples, "if Congress ... intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, ... it would have spoken more clearly to that effect.” 511 U.S. at 620, 114 S.Ct. 1793. After Staples, Congress had the opportunity to amend the Act to eliminate the mens rea requirement and it has declined to do so.