**UNITED STATES of America,**
**Plaintiff,**

v.

**Marcelino GUZMAN–MONTAÑEZ,**
**Defendant.**

**Criminal No. 12–240 (FAB).**

United States District Court,
D. Puerto Rico.

Oct. 22, 2012.

---

Maria L. Montanez–Concepcion, United States Attorney's Office, Illegal Firearm Strike Force, Hato Rey, PR, for Plaintiff.

Hector E. Guzman–Silva, Public Defender's Office, Victor J. Gonzalez–Bothwell, Federal Public Defender's Office, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On March 28, 2012, a grand jury returned an indictment charging defendant Marcelino Guzman–Montañez ("Guzman") as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(q)(1) ("count one"), and for possession of a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. § 922(q) ("count two"). (Docket No. 12.) At the close of all evidence in the jury trial, defendant moved for acquittal of both counts, pursuant to Federal Rule of Criminal Procedure 29.[1] The Court de-

---

1. Fed.R.Crim.P. 29 states, in pertinent part: "(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction .... (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved. (c) After Jury Verdict or Discharge. (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the

nied the motion as to count one and reserved judgment as to count two. On July 18, 2012, the jury convicted defendant of both counts. (Docket No. 50.) Subsequently, on August 28, 2012, defendant filed a motion requesting leave to tender a Rule 29 motion. (Docket No. 53.) In his motion, defendant states that he "has been expecting this Honorable Court to issue its ruling as to [c]ount [t]wo. However, taking into consideration the passing of time, [defendant] deems it necessary to tender herewith a Renewed Motion for Judgment of Acquittal.... [Defendant] renews and elaborates the previously submitted arguments in order to assist this Honorable Court in its analysis, particularly as to [c]ount [t]wo of the Indictment." *Id.* at p. 2. Understanding the scope of defendant's motion to thus be limited to count two, the Court granted defendant's motion on August 28, 2012.[2] On August 30, 2012, however, defendant filed a renewed motion for judgment of acquittal, in which he argues for judgment of acquittal as to both counts. (Docket No. 57.) The United States of America ("the government") filed its opposition on September 13, 2012. (Docket No. 55.) For the reasons discussed below, the Court **DENIES** defendant's motion for acquittal as to both count one and count two and **SUSTAINS** the jury verdict.

## I. BACKGROUND

The Court will not rehash the entire trial here. Background information or facts will be recounted as needed in the Court's subsequent legal analysis of particular issues. *See United States v. Stierhoff,* 549 F.3d 19, 21 (1st Cir.2008). The Court conveys the facts throughout the opinion in the light most favorable to the verdict, *United States v. Rodriguez–Marrero,* 390 F.3d 1, 6 (1st Cir.2004), and decides the motion on the basis of the evidence at the time the ruling was reserved. *See* Fed. R.Crim.P. 29(b).

In the morning hours of March 14, 2010, the Puerto Rico Police Department ("PRPD") received a call from Mr. Papo Nieves, a cook at Lechonera Papo Nieves

---

jury, whichever is later. (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal...."

**2.** Rule 29(c)(1) requires a defendant seeking to renew its motion for a judgment of acquittal after a jury verdict or discharge to do so "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Here, the guilty verdict occurred on July 18, 2012, and the jury was discharged on the same day. No 14–day restriction existed as to count two in this case, because the Court reserved decision as to count two, pursuant to Rule 29(b). The window of time available for renewal of defendant's Rule 29 motion as to count one, however, was limited to 14–days after July 18, 2012, or August 1, 2012. *See* Fed.R.Crim.P. 29(c)(1) and accompanying Advisory Committee Notes. The First Circuit Court of Appeals has recognized that despite a defendant's filing of a motion for judgment of acquittal after the 14–day period, the motion may nevertheless be considered timely when, within that 14–day period, the district court extends the time allowable for making the motion. *United States v. Ruiz,* 105 F.3d 1492, 1495 n. 1 (1st Cir.1997). Here, Defendant waited to request leave to tender his Rule 29 motion on August 28, 2012. (Docket No. 53.) His motion requesting an extension of time therefore fell outside of the 14–day window entirely, and had the government raised the issue, the Court would have been precluded from entertaining defendant's motion as to count one. *See Eberhart v. United States,* 546 U.S. 12, 18–19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005); *United States v. Alexander,* 436 F.Supp.2d 190, 193 n. 5. (D.Me.2006). When the Court granted defendant's motion for leave, it interpreted the scope of defendant's renewed motion to pertain only to count two. The renewed motion, however, appears to also pertain to count one, and since the government forfeited any timeliness objection it might have had, the Court will address both counts in its Opinion and Order in an abundance of caution.

in Bayamon, Puerto Rico. (Transcript of Trial on July 16, 2012 ("Day 1") at p. 7.) Mr. Nieves reported suspicious activity by two men in a wine colored Suzuki SX4 who entered the Lechonera and asked if they sold "frituras". (Day 1 at p. 6.) The two men, later identified as defendant Guzman and his acquaintance Miguel, left the Lechonera after Mr. Nieves, who was afraid that an attempted robbery was about to occur, told them that he did not sell "frituras" and had grabbed a large machete and had slammed it on the meat cutting board in front of them because he thought they were "suspicious" and were going to rob him. (Day 1 at pp. 6–7.) Observing a firearm on Miguel as the men were leaving the Lechonera, Mr. Nieves called the police. (Day 1 at pp. 7–8.) Shortly after the call, two Puerto Rico Police Department (PRPD) officers arrived at the Lechonera, interviewed Mr. Nieves and transmitted via radio the description of the Suzuki and the men. (Day 1 at pp. 21–22, 29.)

Hearing the radio transmission, PRPD agent Carmen I. De Jesus observed two men getting out of a wine-colored Suzuki SX4 in front of Church's Fried Chicken Restaurant ("Church's Restaurant") in Rexville, Bayamon. (Day 1 at pp. 33–34.) She immediately relayed the whereabouts of the vehicle and individuals over the radio and provided a second description of the men. (Day 1 at p. 34.) Agents Edilberto Mojica–Caldero ("agent Mojica") and Jose Arroyo–Perez ("agent Arroyo"), who were working for the PRPD Criminal Investigations Corps and were assigned to investigate robberies, received the radio transmissions that morning and drove to the Church's Restaurant. (Day 1 at pp. 57–58; Transcript of Trial on July 17, 2012 ("Day 2") at p. 67.) They parked across the street and walked to Church's Restaurant, passing through the parking lot. (Day 1 at p. 60–61; Day 2 at p. 69.) Standing in the parking lot approximately 45 feet away from defendant Guzman, agent Mojica observed defendant Guzman and Miguel through the Church's Restaurant's crystal windows. (Day 1 at pp. 62–63.) Agent Arroyo testified that he had a clear view of the counter area from the parking lot. (Day 2 at p. 91.) The agents saw defendant Guzman standing in line, looking from side to side, turning his back to the menu area, and glancing outside through the crystal windows.[3] (Day 1 at p. 63–64.) Agent Mojica testified that when defendant Guzman moved, Agent Mojica made out the handle of a pistol at defendant Guzman's waistband. (Day 1 at pp. 64–65.) He recognized the handle to be a butt of a pistol because Agent Mojica carries the same type of pistol—a Smith & Wesson firearm. (Day 1 at p. 65.) Agent Mojica told Agent Arroyo, "He has a weapon. He has a weapon." (Day 2 at p. 73.)

Agent Mojica then observed Miguel, who carried a cell phone, approach the right side of the line where defendant Guzman stood. (Day 1 at p. 66.) During this time, marked police patrol cars entered the parking lot of Church's Restaurant and were visible through the Church's Restaurant's crystal windows. (Day 2 at pp. 8, 14.) Miguel said something to defendant Guzman, and shortly thereafter defendant Guzman left his spot in line and walked rapidly toward the men's bathroom. (Day 1 at p. 66.) Agent Arroyo described defendant Guzman as walking "in an abrupt manner" because he "jump[ed] over the

3. A video recording from Church's Restaurant's security cameras also captured defendant Guzman's behavior, as well as all subsequent actions of police officers—including those of agents Mojica and Arroyo—inside Church's Restaurant. (Docket No. 51, Exhibit 3.)

chain" to go to the bathroom. (Day 2 at p. 79.) A few seconds later, agents Mojica and Arroyo entered the restaurant and observed defendant Guzman already exiting the bathroom and returning to the line. (Day 1 at p. 66–67.) Agent Mojica described the amount of time between when defendant Guzman entered the bathroom and when he exited as "fast." (Day 2 at p. 62.) Defendant Guzman later denied having visited the bathroom when he told postal inspector Yamaris Ortiz during his interview with her "that he never left the line." (Day 2 at p. 104.)

Agent Mojica then detained defendant Guzman, patting him down for the firearm he had observed from the parking lot on defendant Guzman's waistband. (Day 1 at pp. 68–69.) Upon frisking defendant Guzman, however, Agent Mojica found no pistol. (Day 2 at p. 10.) Meanwhile, agent Arroyo walked to the men's bathroom to search for a third person—an individual wearing a white shirt—because he believed he had heard a description of such an individual via radio transmission. (Day 2 at p. 70, 73–74.) Agent Arroyo explained that he looked inside the bathroom briefly and did not find anyone inside. (Day 2 at p. 75.) He did not notice a firearm stuck in the diaper changing station, but he also did not perform a search of the bathroom, (Day 2 at p. 80), and was unfamiliar with diaper changing tables. (Day 2 at p. 83.) Once he had handcuffed defendant Guzman, agent Mojica walked to the men's bathroom and proceeded to search it. (Day 1 at p. 70; Day 2 at pp. 11–12.) Agent Mojica testified that he found a loaded firearm—a Smith & Wesson pistol, model 4003 Tactical, 0.40 caliber, serial number VJL7561—stuck in the diaper changing

station. (Day 1 at pp. 72–73; Day 2 at pp. 4–5, Exhibit 8.) Once they had detained defendant Guzman and Miguel, police officers searched the Suzuki and found a second pistol, a Beretta, in the glove compartment.[4] (Day 2 at pp. 20, 26, 29.) At his interview with Ms. Ortiz at the precinct, defendant Guzman claimed not to have a gun with him that day. (Day 2 at p. 105.)

Agent Mojica also testified that a bilingual school called Emmanuel[5] is located near Church's Restaurant. (Day 2 at p. 31.) He stated that he measured a distance of less than 300 feet between the bathroom door of Church's Restaurant and the main gate of the school, (Day 2 at pp. 31–32), and that the school area is located across the street from the Church's Restaurant and shopping center. (Day 2 at p. 33.) The parties later stipulated that: (1) Colegio Emmanuel Discipulos de Cristo ("Colegio Emmanuel") is a school as defined in Title 18, United States Code, Sections 921(a)(26); (2) the distance between the bathroom of the Church's Restaurant and Colegio Emmanuel is 140 feet; and (3) the distance was therefore within 1,000 feet on March 14, 2012. (Transcript of Trial on July 18, 2012 ("Day 3") at p. 34.)

## II. DISCUSSION

### A. Standard

■ In reviewing a motion for judgment of acquittal, a district court must consider the evidence, both direct and circumstantial, "in the light most favorable to the prosecution" to determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the ele-

---

4. The jury was instructed that this pistol is a different pistol from that found in the bathroom, and that defendant Guzman was not charged with possession of the Beretta pistol. (Day 2 at p. 29.)

5. The full name of the school, as stipulated to by the parties, is Colegio Emmanuel Discipulos de Cristo. (Day 3 at p. 34.)

ments of the charged crime beyond a reasonable doubt." *United States v. Lara*, 181 F.3d 183, 200 (1st Cir.1999) (citations omitted). This standard requires the resolution of all evidentiary disputes and credibility questions in favor of the government; the Court must also draw all reasonable inferences in favor of the government's case. *United States v. Savarese*, 686 F.3d 1, 8 (1st Cir.2012). Thus, the jury's verdict stands unless the evidence could not have persuaded a rational trier of fact of the defendant's guilt beyond a reasonable doubt. *United States v. Soler*, 275 F.3d 146, 150 (1st Cir.2002) (citing *Lara*, 181 F.3d at 200). The Court assesses only the admissible evidence at trial in applying the sufficiency standard. *United States v. Aviles–Colon*, 536 F.3d 1, 13–14 (1st Cir. 2008)

**B. Defendant's Motion for a Judgment of Acquittal**

Defendant alleges that his convictions under count one and count two of the Indictment cannot stand. As discussed above, the Court, in an abundance of caution, will address defendant's convictions of both counts, in turn.

**1. Count One: Possession of a Firearm and Ammunition**

■ Count one of the Indictment charges defendant with knowingly and unlawfully possessing in and affecting interstate commerce, a firearm and ammunition, in violation of 18 U.S.C. §§ 922(q)(1) and 924(a)(2).[6] At trial, the parties stipulated that the Smith & Wesson firearm allegedly found in the men's bathroom and attributed to defendant Guzman was not manufactured in Puerto Rico and was transported in interstate or foreign commerce. (Docket No. 45.) The parties also stipulated that before March 24, 2012, defendant Guzman had been convicted of a crime punishable by imprisonment for a term in excess of one year. (Docket No. 47.) The government therefore proved these two elements beyond a reasonable doubt. Defendant argues that his conviction under count one cannot stand, however, because the evidence does not support the jury's finding of guilt as to the element of possession. Specifically, he contends that there was insufficient evidence to establish beyond a reasonable doubt that he possessed the Smith & Wesson firearm allegedly found stuck behind the diaper changing station in the Church's Restaurant bathroom. (Docket No. 55 at p. 7.) Accordingly, the Court must determine whether sufficient evidence exists as to prove beyond a reasonable doubt that defendant Guzman possessed the Smith & Wesson pistol.

Defendant first points to the testimony of PRPD agents Ismael Diaz–Rivera ("agent Diaz") and Ismael Perez–Perez ("agent Perez") to support his Rule 29 motion. During trial, agents Diaz and Perez stated that they parked across the street from Church's Restaurant in a marked police patrol car, (Day 3 at pp. 14, 28), and that they did not see any other patrol cars at the time they arrived. (Day 3 at p. 13.) Agents Diaz and Perez said they did not see any undercover or plain clothed agents approach Church's Restaurant and did not observe any armed persons in the area of the surrounding parking lot. (Day 3 at pp. 16–17, 29, 31.) Based on this

---

**6.** Pursuant to 18 U.S.C. § 922(g)(1), it is "unlawful for any person who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year ... to possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 924(a)(2) states, in pertinent part, "Whoever knowingly violates subsection ... (g) ... of section 922 [18 U.S.C. § 922] shall be fined as provided in this title, imprisoned not more than 10 years, or both."

testimony, defendant argues that no police officer was indeed present outside Church's Restaurant observing defendant Guzman when agent Mojica claims to have done so. (Docket No. 55 at pp. 6–7.) Because agents Diaz and Perez testified that they did not see any plain clothed or undercover officer outside Church's Restaurant, defendant argues that no evidence demonstrates that officer Mojica (1) "was in fact in the location truly where he alleged he was," or (2) saw a firearm on defendant Guzman's person. *Id.* at p. 6. Further, defendant refers to officer Arroyo's failure to notice the firearm tucked into the men's bathroom's changing station as "perplexing circumstances" that entirely call into question the firearm's presence in the bathroom. Defendant thus contends that there is a lack of suitable evidence showing defendant Guzman actually possessed the Smith & Wesson pistol. *Id.*

At most, the testimony of the police officers involves a credibility issue, which, under Rule 29 analysis, must be resolved in favor of the government. The Court does not perceive the testimony of agents Diaz, Perez, Mojica, and Arroyo to be facially inconsistent, as evidence could explain why agents Diaz and Perez did not see agents Mojica or Arroyo outside Church's Restaurant: the video recording shows that agents Mojica and Arroyo were dressed in plain clothes so as not to alert anyone as to their official duties that day, and the officers were not all acquaintances, as agents Mojica and Arroyo work with the Criminal Investigations Corps, not with agents Perez or Diaz. A rational jury could have drawn the inference that although officers Diaz and Perez did not notice agents Mojica and Arroyo, the latter officers were in fact present where they said they were. Nevertheless, the standard for a Rule 29 motion for acquittal is a prosecution-friendly one that "requires the resolution of all evidentiary disputes and

credibility questions in favor of the government." *Lara,* 181 F.3d at 200. Any inconsistency that might conceivably exist between the officers' respective testimonies is insufficient to overturn a jury's verdict pursuant to Rule 29, *see id.; Soler,* 275 F.3d at 151, because it is precisely the role of the jury—and not of the Court—to assess the credibility of witnesses. *See United States v. Paret–Ruiz,* 567 F.3d 1, 5 (1st Cir.2009).

■ Defendant also points to the government's failure to look for fingerprints on the Smith & Wesson as a reason why it failed to prove possession beyond a reasonable doubt. This amounts to an argument over the lack of direct evidence, however, and is unavailing. The standard for a Rule 29 motion for acquittal permits the Court to examine both direct and circumstantial evidence, *U.S. v. Rivera–Rodriguez,* 617 F.3d 581, 596 (1st Cir.2010), and requires the Court to accept "those reasonable inferences from the evidence (whether or not inevitable) that support the government's view of the case." *Lara,* 181 F.3d at 200. Here, the government introduced substantial circumstantial evidence that, as a whole, supports an inference that the Smith & Wesson pistol found in the men's bathroom belonged to defendant Guzman. Trial testimony of agents Mojica and Arroyo and the video recording from Church's Restaurant all establish that agent Mojica observed a firearm on defendant Guzman as he stood in line; that defendant Guzman exhibited questionable behavior when he looked around the restaurant and glanced outside before abruptly leaving the line, jumping the chain, and rapidly walking towards the men's bathroom, only to return seconds later, returning to his place in line; that shortly after returning to line, agent Mojica frisked and arrested defendant Guzman but found no pistol on his waistband; and

that agent Mojica found a loaded Smith & Wesson pistol stuck behind the diaper changing station in the men's bathroom, which defendant Guzman had visited minutes earlier. At trial, the government introduced the Smith & Wesson pistol that agent Mojica allegedly found, as well as a second pistol found inside the Suzuki SX4. The government also entered into evidence two pictures of the inside of the men's bathroom, one of which depicted the diaper changing station; the ammunition found inside the Smith & Wesson firearm; and two pictures of the inside of Church's Restaurant, one of which shows the hallway leading to the men's bathroom; three pictures of the purple Suzuki SX4, including its license plate, the interior glove compartment, and the second pistol found in the glove compartment. Taken as a whole, this evidence is sufficient to support a rational jury's conclusion beyond a reasonable doubt that defendant Guzman possessed a firearm in violation of 18 U.S.C. §§ 922(q)(1) and 924(a)(2). Accordingly, the Court DENIES defendant's motion for judgment of acquittal as to count one.

## 2. Count Two: Possession of a Loaded Firearm Within 1,000 Feet of a School Zone

■ Count two of the Indictment charges defendant with knowingly possessing a firearm loaded with ammunition that had moved in interstate or foreign commerce, within a distance of 1,000 feet of a school zone, a place that defendant knew or had reasonable cause to believe was a school zone, all in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4).[7] At trial, the parties stipulated that Colegio Emmanuel is a school as defined in 18 U.S.C. § 921(a)(26), and that on March 14, 2012, the distance between the bathroom of the Church's Restaurant in the Rexville area of Bayamon, Puerto Rico, and Colegio Emmanuel was within 1,000 feet.[8] (Docket No. 46; Day 3 at p. 34.) As stated above, the parties also stipulated that the loaded Smith & Wesson firearm allegedly found in the men's bathroom was transported in interstate commerce or foreign commerce. (Docket No. 45; Day 3 at pp. 34–35.) Defendant argues that his conviction under count two cannot stand, however, because there was insufficient evidence to establish beyond a reasonable doubt that: (1) the area was a school zone, and (2) defendant Guzman knew or had reasonable cause to believe that there was a school within 1,000 feet of Church's Restaurant. (Docket No. 55 at pp. 8–10.) Accordingly, the Court must determine whether sufficient evidence exists to allow a rational jury to reach such a finding.

The evidence presented at trial and the evidence to which the parties stipulated was sufficient to prove beyond a reasonable doubt that the area where defendant Guzman possessed the Smith & Wesson pistol was a "school zone." At trial, the government entered into evidence a picture of the front entrance of Colegio Emmanuel, located across the street from Church's Restaurant in Bayamon. Defendant contends that the sign only adver-

---

7. Under 18 U.S.C. § 922(q)(2)(A), it is "unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 924(a)(4) states in pertinent part, "Whoever violates section 922(q) [18 U.S.C. § 922(q)] shall be fined under this title, imprisoned for not more than 5 years, or both. . . ."

8. Puerto Rico Police Department Agent Jose Hiraldo Benitez, if called at trial, would have testified that he measured a distance of 140 feet between the men's bathroom in Church's Restaurant and Colegio Emmanuel. (Docket No. 46.)

tised the services offered by the school, that it was located on the school property facing the street, and that there was no evidence as to the area being an actual "school zone." (Docket No. 55 at p. 9.) The parties, however, stipulated that the distance between the bathroom of the Church's Restaurant and the Colegio Emmanuel was 140 feet. (Docket No. 46; Day 3 at p. 34.) Pursuant to 18 U.S.C. § 921(a)(25), a "school zone" is defined as the area "within a distance of 1,000 feet from the grounds of a public, parochial or private school." Because the parties stipulated to a distance of 140 feet, which falls well within 1,000 feet, they also stipulated that the area was a "school zone." Accordingly, sufficient evidence existed for a rational jury to conclude that the government proved the existence of a "school zone" beyond a reasonable doubt.

The evidence presented at trial was also sufficient for a rational jury to find beyond a reasonable doubt that defendant Guzman knew or had reasonable cause to believe that the area where he possessed a firearm was a "school zone." Defendant Guzman argues that there was no proof he saw the school sign, or that he was even aware of it. (Docket No. 55 at p. 9.) Multiple roads lead to the Church's Restaurant and provide various access points to the restaurant, and defendant Guzman contends that the government failed to introduce evidence as to the exact route defendant Guzman took to enter the restaurant. *Id.* Without such evidence, defendant Guzman argues that is unclear as to whether he necessarily passed Colegio Emanuel to arrive at Church's Restaurant, and thus that he had the requisite knowledge of his presence in a "school zone." *Id.* at p. 10. Moreover, because he is not a resident of Bayamon, defendant Guzman argues that "it is not reasonable to expect him to be knowledgeable of the exact location of each and every school that may exist on a particular area." *Id.*

Defendant Guzman's arguments are unavailing. The Court finds enough evidence in the record to support a jury's finding that defendant Guzman knew or had reason to know that a school was nearby. The parties stipulated that Colegio Emmanuel was a mere 140 feet from the men's bathroom in Church's Restaurant, and agent Mojica testified that the school could be seen from Church's Restaurant. Moreover, the government presented evidence that the Colegio Emmanuel sign sits atop a fence across the street from Church's Restaurant, and agents testified that defendant Guzman glanced through the windows out towards the street. In the aggregate, this evidence enables a reasonable juror to draw the inference that defendant knew or should have known of Church's Restaurant's close proximity to Colegio Emmanuel. Accordingly, the Court DENIES defendant's motion for judgment of acquittal as to count two.

## III. CONCLUSION

Having considered the evidence in the light most favorable to the government and having made all reasonable inferences in its favor, *United States v. Giambro,* 544 F.3d 26, 29 (1st Cir.2008), the Court concludes that the government presented sufficient evidence to support defendant Guzman's convictions. Accordingly, the Court **DENIES** defendant's motion for acquittal as to both count one and count two and **SUSTAINS** the jury verdict.

**IT IS SO ORDERED.**