# United States Court of Appeals

## For the First Circuit

No. 09-2669

UNITED STATES OF AMERICA,

Appellee,

v.

HAZEN D. SHAW,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Boudin, Lipez and Howard,
Circuit Judges.

Jonathan G. Mermim, with whom Preti, Flaherty, Beliveau & Pachios, LLP was on brief, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

February 29, 2012

**HOWARD**, **Circuit Judge**.  A jury convicted the defendant, Hazen Shaw, on one count of possessing an unregistered short-barreled shotgun in violation of the National Firearms Act.  26 U.S.C. §§ 5861(d), 5871.  At trial, he moved for a judgment of acquittal, Fed. R. Crim. P. 29, contending that the Government failed to present sufficient evidence that he knew the shotgun's barrel was shorter than 18 inches, the statutory characteristic subjecting the weapon to the Act.  See 26 U.S.C. § 5845(a).  The trial court denied the motion, and Shaw now appeals his conviction.

## I. BACKGROUND

The question on appeal is one of sufficing of the evidence, so we recite the relevant factual background in the light most favorable to the verdict.  See United States v. Gonzalez-Ramirez, 561 F.3d 22, 24 (1st Cir. 2009).  On a Sunday afternoon in November 2008, state law enforcement officers received a complaint about gunshots being fired in a wooded residential area in Springfield, Maine.  Upon responding, State Trooper Barry Meserve was informed by a resident that the suspected vehicle had just sped away from the scene; Trooper Meserve pursued the departing taillights.  The vehicle took flight down the dirt road, and a chase ensued.  With considerable effort, including the aid of other officers and two road blocks, the police finally stopped the vehicle.  Still not dissuaded, the driver rammed his sedan into a police vehicle parked behind him.  Two officers rapidly approached

-2-

the sedan on foot with weapons drawn, demanding that the driver show his hands. Maine Warden Service Sergeant Ronald Dunham heard "the action of a gun" like a "pump-action gun being operated" and saw the driver "rifling the action of [the] gun." Shaw, the automobile's driver, then put his hands out the window and was immediately apprehended. He was the only person in the car, and a 12 gauge sawed-off "Mossberg 500A" shotgun was found lying near him within ready reach. The sound heard by Dunham was later attributed to the weapon being unloaded.

Shaw was arrested for eluding a police officer and for reckless conduct. A subsequent search of the automobile revealed various items, including two knives and a hatchet, as well as a 20 gauge shotgun with a sawed-off stock in the trunk. A single expelled or spent 12 gauge shotgun round was found between the driver and passenger seats. Shaw himself was carrying, in a pack and on his hunting belt, different types of ammunition, some boxed and some loose. Additional evidence suggested that Shaw had been engaging in some type of hunting activity while seated in his car, by shooting at game from his open car window.

State Trooper Michael Johnston, an evidence technician, arrived at the scene and quickly noticed that the 12 gauge shotgun appeared to be too short for federal guidelines. He further observed that the stock of the weapon had been cut off and covered with duct tape, the gun's barrel "look[ed] like it also had been

cut," and "a homemade sling" was attached "in the form of a yellow-like nylon rope." The outside of the gun barrel still bore printing indicating that the original barrel length had been 28 inches. While the weapon's overall length was about 29 inches, the barrel itself, measured internally, was sixteen-and-a-quarter inches in length. Because the length of the shortened barrel of the 12 gauge was less than 18 inches, the weapon was subject to federal registration requirements. See 26 U.S.C. §§ 5845(a), 5861(d). Shaw was subsequently charged with possession of an unregistered firearm. See 26 U.S.C. §§ 5861(d), 5871. As noted, the trial court rejected Shaw's Rule 29 motion for judgment of acquittal on that charge, and the jury rendered a guilty verdict. This timely appeal followed.

## II. STANDARD OF REVIEW

We review de novo the denial of a Rule 29 motion to determine whether the body of proof as a whole, including direct and circumstantial evidence, was sufficient for a rational jury to conclude beyond a reasonable doubt that the government established each element of the crime. United States v. Pérez Meléndez, 599 F.3d 31, 40 (1st Cir. 2010). In so doing, we consider the evidence, including all reasonable inferences drawn therefrom, in the light most favorable to the jury's verdict. Id. Individual pieces of evidence viewed in isolation may be insufficient in themselves to prove a point, but in cumulation may indeed meet the mark. United

-4-

States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995). Further, "[a]ll credibility disputes are to be resolved in the verdict's favor, and this court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record." United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (internal quotations omitted).

In this case, the question is whether there was enough evidence to permit a rational jury to conclude beyond a reasonable doubt that the defendant knew that the length of the barrel of the shotgun was less than 18 inches. See 26 U.S.C. §§ 5845(a)(1)-(2), 5861(d).

### III. GOVERNING LAW AND ANALYSIS

The National Firearms Act, 26 U.S.C. §§ 5801-5872, imposes strict regulations on certain statutorily defined "firearms." Pertinent here, Congress has deemed it unlawful for any person "[t]o receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). A "firearm" generally constitutes certain shotguns and rifles, machineguns, silencers and destructive devices; firearm feature terminology is further defined by statute. See 26 U.S.C. § 5845. In the context of this appeal, a "firearm" means "a weapon made from a shotgun if such weapon as modified has . . . a barrel . . . of less than 18 inches in

length." 26 U.S.C. § 5845(a)(2). Failure to comply with the registration requirement is punishable by a fine of $10,000 and up to ten years of imprisonment. 26 U.S.C. § 5871.

While the defendant's knowledge is at the heart of this appeal, the statute itself does not expressly contain a mens rea requirement. The United States Supreme Court addressed this statutory silence in Staples v. United States, 511 U.S. 600 (1994). There, the defendant had been convicted of possessing an unregistered "machinegun" firearm in violation of section 5861(d). 511 U.S. at 614. The firearm, a semiautomatic AR-15 rifle had been modified to render it capable of fully automatic firing; the modified firing feature subjected the weapon to the Act's registration requirement as a machinegun. See id.; see also 26 U.S.C. § 5845(a)(6), (b) (defining "machinegun" firearm). The trial court had not required the jury to find that the defendant knew that the weapon possessed the characteristic (which resulted largely by an internal modification) rendering it a machinegun under the statute. Staples, 511 U.S. at 603-04). Overturning Staples' conviction, the Court held that the government "should have been required to prove beyond a reasonable doubt that [Staples] knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun," reasoning that Congress had not clearly dispensed with the common law mens rea requirement. Id. at 602, 616-20.

The government assumes that Staples' scienter requirement applies in this case involving a sawed-off weapon. For purposes of our analysis, so will we.[1]

The defendant contends that the record contains "no evidence that he knew the barrel of the shotgun was less than 18 inches." According to Shaw, the one-and-three-quarters inch difference between the barrel's actual length, measured internally, and the prescribed length cannot support the proposition that he could have determined its length just by looking at it. Thus, he argues, establishing knowledge required evidence that he was the person who actually shortened the barrel from its original length,

---

[1]Prior to Staples, we had held, in assessing a conviction for aiding the transfer of a "firearm" under the National Firearms Act, that proof of knowledge that a sawed-off shotgun barrel measured less than 18 inches was not required. United States v. DeBartolo, 482 F.2d 312 (1st Cir. 1973). Since Staples, however, we have applied Staples' mens rea requirement when reviewing a conviction for unlawful possession of a combination shotgun and rifle under section 5861(d), United States v. Giambro, 544 F.3d 26, 29 (1st Cir. 2008), and for unlawful possession of a machinegun under 18 U.S.C. § 922(o), United States v. Nieves-Castaño, 480 F.3d 597, 599-600 (1st Cir. 2007).

Several courts have read Staples to require proof that a defendant knew that an unregistered sawed-off weapon or its barrel was shorter than the statutorily prescribed length. See United States v. Michel, 446 F.3d 1122, 1129-30 (10th Cir. 2006); United States v. Miller, 255 F.3d 1282, 1286-87 (11th Cir. 2001); United States v. Gergen, 172 F.3d 719, 723-24 (9th Cir. 1999); United States v. Reyna, 130 F.3d 104, 108-09, n.3 (5th Cir. 1997); United States v. Edwards, 90 F.3d 199, 205 (7th Cir. 1996); United States v. Starkes, 32 F.3d 100, 101 (4th Cir. 1994)(per curiam). At least one circuit, however, has held that in the context of a "quasi-suspect" weapon (such as "a hand grenade, sawed-off shotgun or Molotov cocktail"), the government need only prove that the defendant knowingly possessed the item. United States v. Dukes, 432 F.3d 910, 915-16 (8th Cir.), cert. denied 547 U.S. 1155 (2006).

or that he owned the gun long enough "to become sufficiently well acquainted with its characteristics to have ascertained its length with the precise degree of accuracy (a margin of error of less than 10 percent)" for him to have visually discerned that the barrel was shorter than 18 inches. He also discounts the evidence of flight as readily susceptible to explanations other than culpable knowledge of gun barrel length.

After carefully examining the record, we conclude that it contains sufficient evidence to support the jury's finding beyond a reasonable doubt that Shaw knew that the barrel of the 12 gauge sawed-off shotgun was shorter than 18 inches. His acquaintance with the particular weapon, his familiarity with firearms generally, and the external and readily observable shortened feature of the gun's sawed-off barrel permitted the jury to infer Shaw's knowledge relative to barrel length. We explain below.

First, the evidence allowed the jury to rationally infer that Shaw was well acquainted with this particular shotgun, which had a shortened stock covered with duct tape and an immediately apparent sawed-off barrel. See United States v. Giambro, 544 F.3d 26, 30 (1st Cir. 2008) (sufficient evidence of scienter based in part on defendant's familiarity with the particular weapon). There was evidence that he was engaging in some type of hunting excursion and that he fired the 12 gauge from inside the confines of his automobile through an open window. Indeed, the gun bore a

"homemade sling" of "yellow-like nylon rope," apparently for ease of use. Also, there was evidence that Shaw deftly unloaded the shotgun while seated in a constricted area, the driver's seat of his vehicle, while law enforcement officers descended upon him with guns drawn amidst an intense effort to secure his custody.

Maneuvering the shotgun inside the close confines of his car during his sport and during the highly charged circumstances of his apprehension provides ample factual foundation for the jury to rationally conclude that he was quite familiar with this particular weapon and appreciated its smaller stature -- including the short barrel feature. See Staples, 511 U.S. at 615 n.11 (noting that defendant's use of the weapon can make its regulated characteristics immediately apparent); United States v. Jones, 222 F.3d 349, 352 (7th Cir. 2000) (noting that evidence defendant observed and handled the sawed-off shotgun can be sufficient for jury to reasonably infer his knowledge of the weapon's statutory characteristic relative to length of gun or length of barrel); cf. United States v. Michel, 446 F.3d 1122, 1131 (10th Cir. 2006) (collecting cases on same, but holding that where "government presented absolutely no evidence that [defendant] ever observed or handled the gun," the record was insufficient to establish defendant's mens rea relative to barrel length); United States v. Nieves-Castaño, 480 F.3d 597, 601-02 (1st Cir. 2007) (finding scienter evidence insufficient where defendant had not observed the

relevant external feature of the weapon, observation of weapon would not alert a layman to such relevant feature, and defendant had not used the gun to know that it operated as a machinegun).

Second, the evidence allowed the jury to rationally infer that Shaw was familiar with firearms, more so than an average layman, and thus able to meaningfully distinguish between the physical characteristics and capabilities of different guns, including the Mossberg. See Giambro, 544 F.3d at 30 (court's holding on sufficiency of scienter evidence was based in part on defendant's heightened knowledge and interest in firearms). For example, he was wearing a pack of ammunition suitable to different shotguns and different hunting purposes, and had more of such ammunition in a hunting-style belt holder and strewn inside his vehicle. Also, he chose to use his 12 gauge shotgun in his sporting activity that day, with its crude strap apparently for ease of use and with its shortened stock and barrel, rather than using the 20-gauge found in the trunk, which had a shortened stock but a much-longer intact barrel. Shaw's possession of two different shotguns of distinctly different barrel lengths and with varying ammunition, and his apparent hunting propensity and peculiar use of the short-barrel gun allowed the jury to conclude that he was an experienced hunter who understood the desirability of different weapons in different circumstances. This evidence allowed the jury to infer that Shaw knew about distinct

characteristics of different guns generally, and particularly those of his Mossberg pump. See Giambro, 544 F.3d at 30. And again, Shaw's aptitude in maneuvering the 12 gauge inside his vehicle for sport and during the charged interaction with law enforcement further displayed his knowledge about and experience with shotguns.

Third, the shortened nature of the shotgun's barrel is an external characteristic, and the evidence permitted the jury to infer that the barrel length of less than 18 inches was readily observable to the defendant. See Giambro, 544 F.3d at 30 (scienter evidence found sufficient based in part on the visual appearance of short barrel, which revealed that the statutory characteristics were "evident from looking at the weapon"). Trooper Johnston testified that the barrel looked like a portion had been cut off, and its outside still bore printing indicating that the barrel's original length had been 28 inches, a significant stretch lengthier than the sixteen-and-a-quarter inches. See Staples, 511 U.S. at 615 n.11 (noting that defendant's knowledge of the regulated characteristic can be inferred from "any external indicators signaling the nature of the weapon"). Moreover, Johnston had immediately noticed the short stature of the 12-gauge barrel when he arrived at the scene, raising his concern about whether it measured the requisite 18 inches. See Giambro, 544 F.3d at 30 (noting testimony that police detective recognized the weapon to be

a firearm subject to federal regulation due to its short barrels "as soon as he saw it").

Evidence relating to how the gun barrel was measured also is telling. Special Agent Kenneth Stengel of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that he followed standard procedure when measuring the barrel's length, which involved closing the bolt of the shotgun, inserting a wooden dowel, and measuring the dowel mark to the bolt face. Stengel testified that this process, which is performed on the inside of the barrel, resulted in "measur[ing] to the furthest point on the barrel" as a "way of giving the benefit of the doubt to the defendant." This testimony gives rise to a reasonable inference that the shotgun barrel when viewed externally appeared to be even shorter than the internally measured sixteen-and-a-quarter inches.[2] Moreover, the weapon's barrel was in fact one-and-three-quarters inches shorter than the prescribed minimum. See United States v. Green, 435 F.3d 1265, 1273 (10th Cir. 2006) (holding that evidence of knowledge about barrel length was sufficient in part because shotgun barrel was 16.5 inches; witness testified that the barrel appeared short and "anyone who looked quickly at the gun would notice it was short or that the barrel had been sawed off");

_____

[2]The record suggests that when measured externally, the length of the shotgun barrel was fifteen-and-a-half inches, further supporting that the jury could have rationally concluded the barrel's visual appearance alerted the defendant to the fact that it was shorter than 18 inches.

Miller, 255 F.3d at 1287 (evidence that shotgun barrel was fifteen-and-one-half inches permitted jury to infer that defendant knew barrel was shorter than eighteen inches); Moore, 97 F.3d at 564 (the jury could have reasonably inferred defendant's knowledge that rifle was shorter than 16 inches by observing the weapon, which was thirteen-and-one-sixteenth inches long).

Other evidentiary details provided the jury with indicia that, from looking at the weapon, the defendant would have known that the barrel was shorter than 18 inches.  Photographs of the scene were displayed to the jury, including one depicting the interior of the front seat of the vehicle where the 12-gauge was resting pointed toward the floorboard.  Another photograph displayed the shotgun on the vehicle's hood beside a tape measure showing the overall gun length.  These pictures gave the jury the opportunity to see the weapon -- and its barrel -- in proportion to other real life objects, and even juxtaposed with a tape measure. Moreover, the gun was admitted into evidence, allowing jurors to see the weapon for themselves.  Thus, the jury had ample opportunity to reach its own determination as to whether the statutorily prescribed short barrel length was clear from simply looking at the shotgun.  See Giambro, 544 F.3d at 30 (noting that "[t]he jury saw the weapon and therefore could reach its own determination of whether the characteristics were clear from simply looking at the [weapon]"); United States v. Ortiz, 966 F.2d 707,

-13-

712 (1st Cir. 1992) (noting that "jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience"); see also United States v. Sanders, 520 F.3d 699, 701 (7th Cir. 2008) (noting that jury could infer that defendant knew barrel length was shorter than 18 inches from evidence that defendant handled the shotgun if its appearance would have revealed that characteristic); Green, 435 F.3d at 1273 (upholding conviction for possession of unregistered firearm under section 5861(d) where testimony established that sawed-off shotgun with barrel of 16.5 inches obviously appeared short and "jurors were permitted to examine the shotgun firsthand, allowing them to make their own conclusions as to whether it was apparent the gun was sawed-off").

Despite this record panoply on scienter, Shaw contends that his case fails to reach the quantum of sufficient evidence set forth in Giambro. Seeking to negate any inference that he is knowledgeable about guns and their distinguishing characteristics, Shaw asserts that the evidence against him cannot compare to Giambro's extensive gun collection (more than 200 weapons) and ready discernment that two had been seized -- the evidentiary display of his "specialized knowledge and interest in firearms." Giambro, 544 F.3d at 30. That there may have been extensive evidence in Giambro, however, does not diminish the meaningful

evidence here that Shaw was well acquainted with the particular 12 gauge shotgun at issue, and with shotguns in general.

Shaw also relies on the fact that the discrepancy between the actual barrel length and the required eighteen inches amounts to only one-and-three-quarters inches. We disagree that evidence of a special ability to calculate length based purely on visual inspection was necessary for the jury to reasonably conclude that the defendant knew that the Mossberg's barrel was shorter than 18 inches. As we observed earlier, the evidence permitted the jury to conclude that the barrel's length visually appeared to be some stretch shorter than the actual internal measurement of sixteen-and-a-quarter inches. In any event, the totality of the evidence permitted the jury to conclude for itself that the barrel appeared shorter than 18 inches.

Finally, Shaw urges us to discount the flight evidence. He contends that his motivation for giving chase could have been premised on sundry culpable reasons independent of his knowledge on gun barrel length, ranging from unlawful hunting on a Sunday to unlawful possession of a loaded firearm in the passenger compartment of a car. Rather than parsing Shaw's motivations for his conduct, the jury rationally could have concluded that he was a knowledgeable hunter who flagrantly disregarded the law, including knowingly possessing a shotgun with a barrel of less than 18 inches in length. Likewise, we are unmoved by the lack of

evidence showing that he attempted to conceal the weapon; another plausible read by the jury was simply that Shaw lacked the time, opportunity or aforethought to try to hide the weapon. See United States v. Rodríguez-Durán, 507 F.3d 749, 758, 759 (1st Cir. 2007) (observing that "[t]he government need not succeed in eliminating every possible theory consistent with the defendant's innocence" to secure a conviction, and that the jury "may reject even a reasonable hypothesis inconsistent with guilt, so long as the evidence also reasonably supports culpablity" (internal quotations and citation omitted)). In any event, even putting aside the flight evidence, the government satisfied its evidentiary burden to prove beyond a reasonable doubt that Shaw knew that his 12 gauge shotgun had a barrel shorter than 18 inches.

One brief matter remains. When charging the jury, the district court instructed on the meaning of "knowingly" and also informed the jury that it "may infer" knowledge in the event that it found the necessary predicate components of willful blindness. See Pérez Meléndez, 599 F.3d at 41 (noting that "[w]illful blindness serves as an alternate theory on which the government may prove knowledge"); United States v. Azubike, 564 F.3d 59, (1st Cir. 2009) (discussing when a case warrants willful blindness charge); United States v. Brandon, 17 F.3d 409, 451-54 (1st Cir. 1994) (discussing boundaries of willful blindness charge). In its brief, the government argued in support of the willful blindness

-16-

instruction and the evidence supporting a willful blindness jury finding as a basis to affirm. We note that the defendant did not challenge the jury instruction either at trial or in the opening brief. Nevertheless, given our conclusion that the evidence supports a finding of actual knowledge, we see no need to address whether the evidence also permitted the jury to find scienter premised on willful blindness.

## IV. CONCLUSION

That a different jury could have rendered a different verdict does not undermine the legal sufficiency of Shaw's conviction. See Hatch, 434 F.3d at 4. We do not shy away from overturning jury verdicts for lack of sufficient evidence when the record demands it, see O'Laughlin v. O'Brien, 568 F.3d 287, 301 (1st Cir. 2009) (collecting cases), and we have done so in the context of the scienter element for unlawful conduct involving a "firearm," see Nieves-Castaño, 480 F.3d at 602. After taking a hard look at the record in this case, we are satisfied that the jury's verdict is not based on sheer speculation, pure conjecture or improperly stacked inferences, but is fully supported by sufficient evidence.

The judgment is **affirmed.**


- Concurring and Dissenting Opinions Follow -

**BOUDIN, Circuit Judge, concurring**.  We can assume that under <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 619 (1994), Shaw had to know that his shotgun's barrel was less than 18 inches long, although not that it was unlawful to possess an unregistered weapon of that length.[3]  This juxtaposition may seem perverse; but a defendant's ignorance of facts may often defeat a criminal charge while ignorance of the law does so only rarely.  Courts sometimes say that knowledge of the law is imputed to a defendant, yet this is not a factual proposition but legal shorthand for saying that ignorance of the law does not usually excuse a violation.

Nevertheless, relevant to what Shaw knew about the length of his shotgun is the likelihood that Shaw gave any attention to the length of the weapon.  One might be handed a fork and use it to eat pie without being aware whether the fork had three tines or four.  By contrast, Shaw had to know that he possessed a short-barreled sawed-off shotgun that was significantly shorter than an ordinary shotgun used for hunting.  <u>See</u> Laycock, <u>The Shotgunnner's Bible</u> 48 (rev. ed. 1987) ("The modern shotgun barrels offered across the counters commonly come in three sizes--twenty-six, twenty-eight, or thirty inches.").

---

[3]There is now a circuit split as to whether under <u>Staples</u> the knowledge of length requirement applies to short-barreled shotguns, <u>compare, e.g.</u>, <u>United States</u> v. <u>Erhart</u>, 415 F.3d 965, 969 & n.4 (8th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1156 (2006), <u>with</u> <u>United States</u> v. <u>Reyna</u>, 130 F.3d 104, 107-09 (5th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1033; but the government does not argue that <u>Staples</u> intended an exception for shotguns.

-18-

The jurors were from Maine, a largely rural state with many forests and fields, where hunting is a common pastime. Whatever the average Boston resident may know about hunting, Maine hunters--or at least those who use shotguns--are quite likely to know that shotguns used in hunting are long-barreled weapons.[4] And the jury knew that Shaw was no stranger to shotguns; he was found in possession of two--for which he had three different kinds of ammunition--and was observed by law enforcement manipulating and unloading one of the weapons in a manner suggesting familiarity with its operation.

Sawed-off shotguns are notoriously associated not with hunting but with crime.[5] Even a city dweller who watches television or reads newspapers would know the reputation of the weapon. The shotgun in this case was not only short but visibly shortened in both its stock and its barrel, both of which had been cut down. A hunter like Shaw almost certainly had to know that his

---

[4]District of Columbia v. Heller, 554 U.S. 570, 625 (2008) ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns."); Demko v. United States, 216 F.3d 1049, 1051 (Fed. Cir. 2000) (noting that the ATF has designated short-barreled shotguns as "destructive devices").

[5]E.g., 10 The New Encyclopaedia Britannica 765 (15th ed. 1994) ("The sawed-off shotgun, with truncated barrels, is easily concealed and is notorious as a criminal weapon."); Conf. Rep. No. 90-1956 (1968), reprinted in 1968 U.S.C.C.A.N. 4426, 4434 ("The present National Firearms Act covers gangster-type weapons such as . . . sawed-off shotguns . . . .").

weapon was not a typical shotgun used in ordinary hunting but a visibly and substantially shortened weapon.

Thus, Shaw almost certainly knew that the barrel was considerably less than its ordinary length--here, the original barrel length was marked as 28 inches--and that it was not an ordinary hunting weapon. In fact, the visible length was only 15.5 inches. And once his awareness of its peculiar shortness is posited, the remaining inference as to what he knew about its length involves a far shorter jump. All the jury needed to conclude was that Shaw, conscious of its shortened length, would realize that the barrel was less than a foot and a half long.

An ordinary 12-inch ruler is a familiar item at school and at home. Shaw's shotgun had a visible barrel length only 3.5 inches more than a ruler. A jury, looking at the shotgun and reasonably believing that Shaw would himself appreciate its aberrant shortness, could conclude that the barrel looked somewhat longer than a ruler but not as long as a foot and a half, and that Shaw therefore knew that it was less than 18 inches. Shaw did not have to know that its precise visible length was 15.5 inches.

We cannot be certain how much jurors who sat on this jury knew about hunting and typical shotgun lengths, for the background facts that juries use in drawing inferences are not commonly "proved" but assumed to be within their ken. United States. v. Amado-Núñez, 357 F.3d 119, 121-22 (1st Cir.), cert. denied, 542

-20-

U.S. 914 (2004). But Maine jurors, exercising common sense, could gauge that a hunter would know his weapons as well as a carpenter knows his tools--unless circumstances (e.g., a novice hunter) suggested otherwise.

The question on appeal is not whether the particular appeals court panel would vote to convict on this evidence; it is whether a reasonable jury, entitled to considerable deference in weighing this evidence, could find that Shaw was aware that his shotgun barrel was less than a foot and a half long. As in most cases of inference, the issue turns on real-world probabilities and the jury's estimation of them in light of general knowledge and experience. In this, as with credibility determinations, the jury enjoys considerable latitude.

A great judge warned about the danger of "appellate judges . . . whetting their appetite for dealing with facts" rather than leaving them to the jury or judge who saw the witnesses and heard the evidence. Chem. Transporter Inc. v. Reading Co., 426 F.2d 436, 439 (2d Cir. 1970) (Friendly, J., dissenting). A jury verdict starts with a very strong presumption in its favor, and that presumption is not overcome where, as here, one can imagine how a reasoning jury might have arrived at the conclusion that this one did.

-21-

**LIPEZ**, **Circuit Judge**, **dissenting**. The majority concludes that the government's evidence was sufficient to allow a jury to determine beyond a reasonable doubt that Shaw had knowledge of the specific fact that the barrel of his shotgun was less than 18 inches in length. I disagree. The jury's verdict required impermissible speculation.

**I.**

The government bears a difficult burden of proof in this case because of the specific mens rea requirement imposed by the Supreme Court in Staples v. United States, 511 U.S. 600 (1994). As the majority observes, the Court held in Staples that in a prosecution under the National Firearms Act (the "Act"), 26 U.S.C. §§ 5801-5872, "the Government should [be] required to prove that [the defendant] knew of the features of his [weapon] that brought it within the scope of the Act," Staples, 511 U.S. at 619. In this case, Staples required that the government prove that Shaw knew that the barrel of his 12-gauge shotgun was less than 18 inches in length.[6] See 26 U.S.C. § 5845(a)(1). The probative force of the

---

[6] The concurrence begins by referring to United States v. Erhart, 415 F.3d 965 (8th Cir. 2005), which reiterated the Eighth Circuit's holding in United States v. Barr, 32 F.3d 1320 (8th Cir. 1994), that the knowledge requirement imposed by Staples does not apply to short-barreled shotguns. However, these cases remain outliers; no other circuit has adopted this position and several, directly addressing Barr, have explained in detail why that approach is a misreading of Staples. See, e.g., United States v. Gergen, 172 F.3d 719, 723-34 (9th Cir. 1999); United States v. Reyna, 130 F.3d 104, 107-09 (5th Cir. 1997); United States v. Edwards, 90 F.3d 199, 203-05 (7th Cir. 1996). The majority does

-22-

circumstantial evidence relied upon by the majority to support the jury's verdict must be measured against this specific mens rea requirement.

The majority finds that Shaw's "acquaintance with the particular weapon, his familiarity with firearms generally, and the external and readily observable shortened feature of the gun's sawed-off barrel permitted the jury to infer Shaw's knowledge relative to barrel length."  These factors reflect the majority's reliance on our decision in United States v. Giambro, 544 F.3d 26 (1st Cir. 2008).  In that case, the weapon at issue was a 1914 Marble Game Getter.  As described by the court,

> [i]t has two barrels - a rifle barrel which is on top of a shotgun barrel.  Each barrel is between twelve and eighteen inches long.  The gun has a folding stock that allows the user to fire the gun like a pistol.  It also has a lock on the loading end of the barrels that allows the user to fire a shot from either the top or bottom barrel without reloading.

Id. at 28.  The Act requires that owners register "weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading."  26 U.S.C. § 5845(e); id. § 5841.  The defendant in Giambro argued that the evidence was insufficient to establish his knowledge of the characteristics of the firearm that placed it within the Act's registration

---

not rely on Barr's reasoning and neither, ultimately, does the concurrence.

-23-

requirement. We held that the evidence was sufficient because the defendant 1) was familiar with the specific firearm at issue, 2) was unusually knowledgeable about firearms in general, and 3) the relevant characteristics of the firearm were externally visible. Giambro, 544 F.3d at 30. None of these factors support the verdict here.

## A. Familiarity with the Shotgun

In Giambro, officers seized 204 firearms from the defendant. When the defendant went to the police station to retrieve the guns, which were laid out in front of him, he noticed that the gun covered by the Act was missing. Id. We concluded that "[t]he jury could reasonably infer that [the defendant] was well aware of the [gun's] particular characteristics. After all, he specifically asked for it when it was not among the weapons returned to him at the police station." Id.

In contrast, the government presented no evidence of Shaw's history or familiarity with the shotgun at issue here, aside from the fact that he was arrested with it. Nothing about the exercise of preparing a gun for hunting requires awareness of the precise length of the barrel of the gun. If the government had presented evidence that Shaw himself had modified the shotgun, the argument that he was aware that the barrel measured less than 18 inches would make more sense. See United States v. Sanders, 520 F.3d 699, 701 (7th Cir. 2008) (noting that fact that defendant

-24-

personally modified shotgun was "compelling" evidence that he was aware that the barrel was shorter than 18 inches in length). There is no such evidence in this case. There is also no evidence that Shaw had any particular reason or need to know the length of the shotgun's barrel.

## B.  Knowledge of Firearms Generally

In Giambro, we also relied on the fact that the defendant owned such a large number of guns - more than two hundred - that the jury could infer that "he was a gun collector or had at least a specialized knowledge and interest in firearms." 544 F.3d at 30. This expertise supported the inference that he was aware of the specific characteristics of the "Game Getter" weapon.

There is no similar evidence of expertise in this case. Shaw was found with two guns in his possession, not two hundred, some ammunition, and other items useful for hunting. Although the evidence might support an inference that Shaw was an experienced hunter, there was no evidence that an experienced hunter, unlike an ordinary person, would be aware of the specific fact required by the mens rea in this case - that the barrel of the shotgun being used for hunting was less than 18 inches in length. While it is true that one wishing to hunt illegally from within a vehicle may be sensitive to the need for a weapon with a shorter barrel, this need does not require an awareness of the precise length of a weapon's barrel. In fact, for such an exercise, the overall length

-25-

of the weapon is its more relevant characteristic, not the length
of its barrel.

## C. The Visibility of the Shotgun's Relevant Characteristic

Perhaps most significantly, the majority relies on the
conclusion that "the evidence permitted the jury to infer that the
barrel length of less than 18 inches was readily observable to the
defendant."  It is true that it may be reasonable in some
circumstances to infer that merely observing a weapon or handling
it on one occasion is sufficient to provide an awareness of its
relevant characteristics.  See Staples, 511 U.S. at 615 n.11
(noting that, upon observation, knowledge may be inferred based on
"any external indications signaling the nature of the weapon").
For example, in Giambro, we noted that the Game Getter was a very
unusual weapon with "distinctive features."  544 F.3d at 28.  In
particular, its vertically stacked rifle and shotgun barrels, along
with the lock that allowed the user to fire from either barrel
without reloading, were "external indications" that were
"sufficient to put even a layperson on notice that the Game Getter
had the characteristics required by the statute."  Id. at 30-31
(internal quotation mark omitted); cf. United States v. Nieves-
Castaño, 480 F.3d 597, 601-02 (1st Cir. 2007) (reversing conviction
where relevant characteristics of firearm were not externally
visible and no other material evidence supported conviction).

The Model Penal Code defines "knowledge" of an attendant circumstance as an "aware[ness] that . . . such circumstances exist."[7] Model Penal Code § 2.02(b)(i). Here, the government has produced no evidence indicating that, given the relatively small discrepancy between the barrel's actual length of 15.5 inches and the statutory length of 18 inches, Shaw was able to visually judge the barrel of his shotgun to be impermissibly short. Yet this capacity is a requisite premise of the government's case. One may not be charged with awareness of a fact on the basis of observation alone without proof of the capacity to apprehend that fact visually. That is the inevitable logic of the specific mens rea requirement imposed by Staples.[8]

---

[7] This nearly tautological definition leaves unanswered the question of whether a defendant must consciously consider the fact in question to be deemed to have knowledge of the fact. Alternatively stated, this is the problem of whether latent knowledge - an ability to provide the requisite information if prompted - would suffice to satisfy a mens rea requirement. While I have found no decision addressing the issue, most commentators appear to assume that latent knowledge is knowledge for the purpose of establishing criminal liability. See, e.g., Kenneth W. Simons, Should the Model Penal Code's Mens Rea Provisions Be Amended?, 1 Oh. St. J. Crim. L. 179, 194-95 (2003); Joanne Klineberg, Anger and Intent for Murder: The Supreme Court Decision in R. v. Parent, 41 Osgoode Hall L.J. 37, 57-58 (2003). However, even if we accept this proposition, a defendant must at least have the capacity to be aware of a given fact before being charged with knowledge, actual or latent.

[8] I am aware that other circuits dealing with these gun registration cases have shown a more relaxed approach to similar sufficiency of the evidence challenges. See, e.g., United States v. Michel, 446 F.3d 1122, 1131 (10th Cir. 2006) ("[E]vidence a defendant observed and handled [a] sawed-off shotgun is sufficient for a jury reasonably to infer that the defendant knew that the

Emphasizing that the gun itself was introduced into evidence, along with photographs of the gun at the scene of the arrest, the majority asserts that the jury, relying on "common sense" and the "dictates of mature experience," could determine that Shaw's observation of this particular weapon was sufficient to convey knowledge that its barrel was under 18 inches. Strikingly, one of the photographs introduced by the government showed the shotgun next to an extended tape measure showing the overall length of the gun (not solely the barrel's length). It is difficult to

weapon was shorter than twenty-six inches overall or had a barrel length of less than eighteen inches." (second alteration in original) (internal quotation marks omitted)); United States v. Miller, 255 F.3d 1282, 1287 (11th Cir. 2001) ("[T]he length of the barrel is a patently obvious characteristic, readily apparent to anyone, including [defendant], who observes the gun. . . . The shotgun was admitted as evidence and published to the jury. This evidence permitted the jury to infer that [defendant] knew the barrel's [15.5-inch] length was under 18 inches."). The assumption, oft unexamined, that mere observation is sufficient, in every case, to convey knowledge that the length of a shotgun barrel is under 18 inches is reflective of the "precedential cascade" phenomenon, which leads courts to uncritically follow one another. See Cass R. Sunstein, Why Societies Need Dissent 59-60 (2003); Adrian Vermeule, Common Law Constitutionalism and the Limits of Reason, 107 Colum. L. Rev. 1482, 1497 (2007) ("[A] line of precedents may represent little more than a rational decision by later judges to ignore their private information in favor of what earlier courts have said. Where this occurs, later decisions in the line of precedent are not independent contributions that add to the informational value of the whole . . . ."). In most cases, courts have taken for granted the proposition that observation alone is sufficient to infer knowledge of the barrel's length. Undoubtedly, there are many cases in which the discrepancy between actual length and statutory length is large enough that this observational approach makes sense. However, this will not always be the case, and I respectfully disagree with my colleagues in other circuits who have found that observation alone is always sufficient, no matter how small the discrepancy.

-28-

understand how a demonstration for the jury of comparative length reliant on a tape measure supports the majority's assertion that the "common sense" of the jurors permitted them to infer that Shaw, simply by looking at the shotgun, knew its barrel measured less than 18 inches. Indeed, that tape measure demonstration hopelessly tainted the appeal to common sense.[9]

The majority also notes that there was testimony that one of the arresting officers "quickly noted that the gun . . . appeared to be too short for federal guidelines." The observational capacity of a seven-year veteran of the Maine State Police whose job requires him to make visual judgments about the barrel length of guns is an odd proxy for the "mature experience" of jurors whose roles in life, so far as we know, do not require them to make precise judgments about the length of objects.[10] Certainly, the atypical experiences of the law enforcement officer

_____

[9] Apparently, no objection to this evidence was lodged at trial. That was a mistake.

[10] Offering a romanticized view of Maine as a rural state of forest and field, where everyone knows their guns, the concurrence assumes that the "background facts" available to Maine jurors give them a special capacity to draw inferences about Shaw's awareness of his shotgun's length. In fact, as of 2006, only 14% of Maine's population self-identified as hunters. United States Fish and Wildlife Service, 2006 National Survey of Fishing, Hunting, and Wildlife-Associated Recreation 102 (2006), available at http://wsfrprograms.fws.gov/Subpages/NationalSurvey/nat_survey2006_final.pdf. This disparity between fact and assumption illustrates the dangers of relying on stereotypes to defend a jury's work. That reliance also highlights the conjecture at the core of the majority's decision.

could not rationally inform the judgment of the jurors about Shaw's capacity to judge the barrel length of the shotgun simply from looking at it.

In trying to build its circumstantial case against Shaw, the issue for the government was Shaw's particular capacity to calculate the length of the gun barrel through observation. See Giambro, 544 F.3d at 30-31 (relying on experience, knowledge and awareness of particular defendant); see generally Staples, 511 U.S. at 620 ("[I]f Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, . . . it would have spoken more clearly to that effect."). In this case, the overall length of the weapon at issue was approximately 29 inches. There is no support in the record for the proposition that Shaw's mere observation of a 29-inch long weapon made him aware of the fact that its 15.5-inch barrel was less than 18 inches in length.[11] In evaluating a similar case, the Seventh Circuit has observed that "[t]here may be situations where a person could honestly believe that their possession of the weapon was entirely innocent. For example, it is not hard to conceive of a person reasonably believing a 17.5 inch shotgun is over 18 inches and therefore perfectly legal." Edwards, 90 F.3d at 205. While

_____

[11] The government points out that the shotgun's barrel carried a notation indicating that it was originally 28 inches long. This fact simply confirms that Shaw was aware that the barrel had been shortened - a point that he does not dispute. It is not probative of his knowledge of the extent to which the barrel was shortened.

-30-

there are certainly some discrepancies that are so large that a jury may readily infer the capacity to determine, by mere observation, that the length of a barrel is under 18 inches, a 2.5-inch discrepancy is too small to establish beyond a reasonable doubt Shaw's knowledge by observation.[12]

## D. Consciousness of Guilt

The majority also relies on Shaw's flight as evidence of his consciousness of guilt regarding the barrel length of his unregistered shotgun. However, Shaw was flaunting several laws on the day of his arrest. As he outlines in his brief, "[h]unting on Sunday is illegal. Shooting a gun from a car is illegal, as is shooting a gun within 100 yards of a residence, and hunting without a license. It is also illegal to have a loaded firearm in the passenger compartment of a car." Indeed, Shaw's conduct upon being arrested - ejecting ammunition from the shotgun, rather than endeavoring to conceal it - is inconsistent with the government's theory that he fled because he knew the barrel of the shotgun was less than 18 inches long.

---

[12] For instance, in Sanders, the Seventh Circuit found that the fact that the defendant handled the gun and had it in his possession when he was arrested was sufficient to allow inference of the requisite knowledge. 520 F.3d at 701. However, in that case, the gun at issue had a barrel of less than 12 inches in length, making it more than one-third shorter than the statutory length. While a jury may be entitled to infer that such a dramatic difference is readily apparent, such an inference becomes more speculative the smaller the discrepancy in length.

Given the range of Shaw's illegal conduct on that day, Shaw's flight says nothing about his awareness of the length of his shotgun barrel.  As we stated in Nieves-Castano, "knowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged."  480 F.3d at 601 (emphasis in original); see also O'Laughlin v. O'Brien, 568 F.3d 287, 303 (1st Cir. 2009) ("Although [defendant's] behavior could indicate consciousness of guilt for some crime, . . . it is an impermissible inferential leap for a jury to find this behavior significantly probative of whether [defendant] committed [the crime charged].").

## II.

Because it finds that there was sufficient evidence to permit the jury to find that Shaw had actual knowledge of the length of his shotgun's barrel, the majority does not address the issue of willful blindness.  Since I do not find the evidence to be sufficient to prove actual knowledge, I now do so.

As we have previously explained, "[w]illful blindness serves as an alternate theory on which the government may prove knowledge."  United States v. Pérez-Meléndez, 599 F.3d 31, 41 (1st Cir. 2010).  In order to establish willful blindness, a jury must make two findings:  "First, that the defendant was aware of a high probability of the fact in question; second, that the defendant consciously and deliberately avoided learning of that fact."  United States v. Lizardo, 445 F.3d 73, 85 n.7 (1st Cir. 2006)

-32-

(finding no error in quoted instruction). Willful blindness is determined using a subjective standard, and thus "[t]he focus of the willful blindness instruction must be on the particular defendant and not on the hypothetical reasonable person." United States v. Griffin, 524 F.3d 71, 80 (1st Cir. 2008).

Although willful blindness is not the same as actual knowledge, it is not a lesser standard. United States v. Cunan, 152 F.3d 29, 40 (1st Cir. 1998) (stating that jury must find willful blindness beyond a reasonable doubt); United States v. Whittington, 26 F.3d 456, 462 (4th Cir. 1994) (stating that willful blindness instruction does not alter requirement that knowledge be proved beyond a reasonable doubt). Negligence, carelessness, or mistake in apprehending a fact are insufficient to establish willful blindness. See Griffin, 524 F.3d at 80-81. In fact, we have cautioned that "[t]he danger of an improper willful blindness instruction is 'the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place.'"[13] United States v. Brandon, 17 F.3d 409, 453 (1st Cir.

_____

[13] For this reason, we limit the circumstances in which willful blindness instructions are given, and we are often faced with the issue of whether the instruction was appropriate given the facts of a particular case. We have held that "'[a] willful blindness instruction is appropriate if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge.'" United States v. Mitrano, 658 F.3d 117, 123 (1st Cir. 2011) (quoting

-33-

1994) (quoting <u>United States</u> v. <u>Littlefield</u>, 840 F.2d 143, 148 n.3 (1st Cir. 1988)(alteration in original)(internal quotation mark omitted)).

Ultimately, a willful blindness instruction "'allows the jury to impute knowledge to [a defendant] of what should be obvious to him, if it f[inds], beyond a reasonable doubt, a conscious purpose to avoid enlightenment.'" <u>Pérez-Meléndez</u>, 599 F.3d at 41 (quoting <u>United States</u> v. <u>St. Michael's Credit Union</u>, 880 F.2d 579, 585 (1st Cir. 1989)). Thus, the willful blindness instruction permits conviction on the basis of <u>imputed</u> knowledge, as opposed to actual knowledge. However, whether relying on inferred or imputed knowledge, the quantum of evidence required remains the same -- sufficient evidence to permit a fact-finder to make a determination beyond a reasonable doubt. <u>Cunan</u>, 152 F.3d at 40 (stating that jury must find willful blindness beyond a reasonable doubt).

As explained, "[t]he focus of the willful blindness instruction must be on the particular defendant and not on the

---

<u>United States</u> v. <u>Azubike</u>, 564 F.3d 59, 66 (1st Cir. 2009)). In evaluating the second element, we have noted that "[i]n determining whether the facts suggest the type of deliberate avoidance warranting a willful blindness instruction, we must consider whether the record evidence reveals flags of suspicion that, uninvestigated, suggest willful blindness." <u>Id.</u> (internal quotation marks omitted). In this appeal, Shaw does not challenge the court's decision to give the willful blindness instruction, but argues that, once given, there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he was willfully blind to the length of his shotgun's barrel.

hypothetical reasonable person." Griffin, 524 F.3d at 80. I have already explained that the government's evidence of Shaw's familiarity with the shotgun he was using, his knowledge of firearms generally, the shotgun's observable length, and his consciousness of guilt was insufficient to establish beyond a reasonable doubt that he knew that the barrel of the shotgun was less than 18 inches in length. Admittedly, the fact of Shaw's observation and handling of the gun gets the government closer to the mark, even pursuant to the beyond a reasonable doubt standard, when it must prove only that Shaw was aware of a "high probability" that the barrel was less than 18 inches long, and not his actual knowledge of that fact. However, it is unnecessary to decide whether Shaw's observation of the shotgun's 15.5-inch barrel conveyed an awareness of a "high probability" that it was under 18 inches in length. That is so because the government has failed to present any evidence that would permit the jury to find that the second prong of the willful blindness analysis has been met.

To meet the second prong of the analysis, the government must prove that Shaw "consciously and deliberately avoided learning" of the barrel's length. Lizardo, 445 F.3d at 85 n.7. If the government had introduced some evidence indicating that Shaw had a reason or need to know of the barrel's length, it might have provided a basis for the jury to find that Shaw deliberately avoided learning of this fact. Without this evidence, or any other

evidence indicating a conscious and deliberate decision by Shaw, there is nothing to permit the jury to infer that Shaw deliberately closed his eyes to the barrel's length. Thus, even if I found the evidence sufficient to permit the jury to conclude beyond a reasonable doubt that Shaw was aware that there was a high probability that the barrel was less than 18 inches long - and I do not - I would still conclude that the government's evidence was insufficient to support conviction on the basis of willful blindness.

## III.

The burden imposed by Staples in a case such as this is heavy. It can be difficult to prove beyond a reasonable doubt knowledge of a fact as specific as the length of a gun barrel.[14] Nevertheless, we may not ease the government's burden by allowing the jury to draw inferences that inescapably require undue speculation, see O'Laughlin, 568 F.3d at 301 ("[A] reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008)(internal quotation marks omitted)), and "[g]uilt beyond

---

[14] This burden is neither inevitable nor unintended. As the Court noted in Staples, "if Congress . . . intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, . . . it would have spoken more clearly to that effect." 511 U.S. at 620. After Staples, Congress had the opportunity to amend the Act to eliminate the mens rea requirement and it has declined to do so.

a reasonable doubt cannot be premised on pure conjecture," Stewart v. Coalter, 48 F.3d 610, 615 (1st Cir. 1995).

The majority's decision endorses just such conjecture. It impermissibly dilutes the beyond a reasonable doubt standard. As the Seventh Circuit observed in Edwards,

> although the government may face a tougher burden in the close cases, we believe this is exactly what the Supreme Court held Congress intended - because the close case is exactly when you run the highest risk of convicting someone "whose conduct would not even alert them to the probability of strict regulations."

90 F.3d at 205 (quoting Staples, 511 U.S. at 616). As the appellant forcefully argues, if we affirm the conviction here, we will have adopted the legal fiction at the heart of the government's case - namely, that upon mere observation it is obvious to a person of ordinary perceptive powers that an object 15.5 inches in length does not measure 18 inches. Regrettably, the majority has done so. That fiction is incompatible with the exacting mens rea requirement imposed by Staples.

Therefore, I respectfully dissent.